# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FLORENCE IMMIGRANT AND REFUGEE
RIGHTS PROJECT,

      *Plaintiff*,

   v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      *Defendants*.

Civil Action No. 1:22-cv-03118 (CKK)

# MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## <u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 2

I.      Florence and the Detention Standards for Remote and In-Person Visitation and Legal Mail.
        ......................................................................................................................................... 2

II.     Plaintiff's Second Amended Complaint. ......................................................................... 5

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT .......................................................................................................................... 7

I.      The Court Must Dismiss Plaintiff's SAC Because Plaintiff Lacks Third-Party Standing.  7

A.      Plaintiff has not demonstrated an injury in fact. ............................................................ 8

B.      Plaintiff has not demonstrated a hindrance to its detained clients' ability to protect their
        own rights .......................................................................................................................11

II.     The Court Should Dismiss Plaintiff's SAC for Failing to State a Valid Claim Upon Which
        Relief May be Granted ................................................................................................. 14

A.      Plaintiff's Count 1 substantive due process claim fails. ................................................ 14

B.      Plaintiff's Count 2 Rehabilitation Act claim fails ......................................................... 23

1.      Plaintiff's allegations about their detained clients with disabilities fail to meet the pleading
        standard of sufficient notice ........................................................................................ 24

CONCLUSION .................................................................................................................... 35

# TABLE OF AUTHORITIES

### Cases

*Adams v. Rice*, 531 F.3d 936 (D.C. Cir. 2008) ...................................................................... 23

*Adams v. Vance*, 570 F.2d 950 (D.C. Cir. 1978) ...................................................................... 2

*Alexander v. Choate*, 469 U.S. 287 (1985) ........................................................... 25, 28, 33

*Am. Council of the Blind v. Paulson*, 525 F.3d 1256 (D.C. Cir. 2008) ............................... 23, 25

*Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000)................................. 8, 11, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 6, 15, 17, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 6, 12, 14, 24

*Bell v. Wolfish*, 441 U.S. 520 (1979) .................................... 2, 17, 18, 19, 20, 21

*Block v. Rutherford*, 468 U.S. 576 (1984) ........................................................... 17

*Brown v. District of Columbia*, 928 F.3d 1070 (D.C. Cir. 2019) ................................. 23

*Craig v. Boren*, 429 U.S. 190 (1976) .................................................................... 7

*Curran v. Holder*, 626 F. Supp. 2d 30 (D.D.C. 2009) ........................................... 5

*Demore v. Kim*, 538 U.S. 510 (2003) .................................................................... 20

*Deutsch v. United States DOJ*, 881 F. Supp. 49 (D.D.C. 1995) ........................... 16, 19

*Flemming v. Nestor*, 363 U.S. 603 (1960) ........................................................... 17

*Fong Yue Ting v. United States*, 149 U.S. 698 (1893) ....................................... 17

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) ............................... 7

*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021) ........... 23, 25, 26, 27, 35

*Green v. D.C.*, No. CIV.A. 05-550 (CKK), 2006 WL 1193866 (D.D.C. May 2, 2006) ............ 33

*Hand v. Perez*, Civ. A. No. 14-0880 (BAH), 2015 WL 3534162 (D.D.C. June 5, 2015) ....... 8-9

*Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008) ........................................... 21-22

*Kelleher v. Dream Catcher, LLC*, 263 F. Supp. 3d 322 (D.D.C. 2017) ................... 14

*Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963) ....................................... 17

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) ........................................... 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................... 6

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ................................................... 7, 8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................................ 7, 14

*Maxwell v. Leavitt*, No. CIV.A.02-01732 (HHK), 2005 WL 589017 (D.D.C. Mar. 11, 2005) ............... 12

*Modderno v. King*, 82 F.3d 1059 (D.C. Cir. 1996) ............................................................ 28

*Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) ........................................... 8, 10

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................... 6, 17, 22

*Pell v. Procunier*, 417 U.S. 817 (1974) ..................................................................... 18-19

*Powers v. Ohio*, 499 U.S. 400 (1991)...................................................................... 7, 11, 14

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296 (D.C. Cir. 2014) ............................. 6

*Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007) ......................... 33

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533 (D.D.C. June 17, 2020) ....................................................................................... 11, 12-13

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ............................... 6, 16

*Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305 (D.C. Cir. 2010) ....................................... 30, 31

*Stewart v. St. Elizabeths Hosp.*, 593 F.Supp. 2d 111 (D.D.C. 2009) ..................................... 29, 30

*Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215 (D.D.C. 2012) .......................................... 7

*Turner v. Safley*, 482 U.S. 78 (1987) ...................................... 2, 3, 4, 5, 9, 10, 18, 21

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37 (D.D.C. 2011)  6

*United States v. Moore*, No. CR 18-198 (JEB), 2019 WL 2569659 (D.D.C. June 21, 2019) .................. 17

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................... 7

*Youngberg v. Romero*, 457 U.S. 307 (1982) .............................................................. 20

<u>Statutes</u>

8 U.S.C. § 1231 ........................................................................................ 9

8 U.S.C. § 1225 ........................................................................................ 9

8 U.S.C. § 1226 ........................................................................................ 9

29 U.S.C. § 794 ........................................................................................ 23, 24

Section 504 of the Rehabilitation Act .................................................................. 1, 5, 23, 24

<u>Rules</u>

Fed. R. Civ. P. 8 ...................................................................................... 6, 14, 24, 28

Fed. R. Civ. P. 12 .................................................................... 6, 7, 14, 16, 17, 22, 24, 35

## INTRODUCTION

Plaintiff, the Florence Immigrant and Refugee Rights Project ("FIRRP"), raises a variety of challenges to the telephonic, video telecommunication (VTC), legal mail, and in-person visitation procedures at Florence Correctional Center ("Florence"). FIRRP claims that these procedures interfere with detained non-citizens' access to counsel in violation of the Fifth Amendment Due Process Clause and Section 504 of the Rehabilitation Act. To the contrary, at Florence, detainees access counsel through several mediums and Defendants abide by the appropriate performance-based national detention standards. Plaintiff would prefer, Plaintiff's pleadings admit FIRRP counsel are able to meet with and talk to their clients at Florence. Plaintiff has failed to present a claim that Defendants have violated detained clients' right to due process or protection under the Rehabilitation Act.

Initially, Plaintiff has not pled sufficient facts to establish third-party standing or to provide Defendants with sufficient notice about the claims. Specifically, Plaintiff does not identify any client who was injured by Defendants' procedures in any actual proceeding or show that FIRRP clients are hindered in bringing their claims as first-party litigants. *See* Fed. R. Civ. Pro. 12(b)(1).

Moreover, as outlined *infra*, Plaintiff fails to plead a valid claim upon which relief can be granted. *See* Fed. R. Civ. Pro. 12(b)(6). In the Second Amended Complaint ("SAC"), Plaintiff does not offer sworn statements from FIRRP counsel or any declarations from detained clients in support of its claims. Instead, Plaintiff's assertions reveal FIRRP counsels' preferences in representing detained clients. For example, despite the availability of in-person (and now VTC) visitation at Florence, Plaintiff seeks more telephonic and VTC visitation opportunities and new procedures for detainees to fax or email legal documents so that Plaintiff does not have to travel to conduct in-person consultations. *See generally*, SAC. Also, Plaintiff demands more private, confidential, and sound-proof areas tailored to attorneys' needs. But Plaintiff requests relief

1

beyond what the national standards or due process require. Such relief would "deeply intrude[] into the core concerns of the executive branch," *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978), such as, administering detention facilities, *Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("the operation of [detention] facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Accordingly, Plaintiff's substantive due process claim fails. The Rehabilitation Act claim also fails because Plaintiff has not pled necessary details about its clients' mental disabilities or outlined what accommodations were requested and, if denied, the basis for denial.

As such, the Court should dismiss Plaintiff's SAC for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(b)(1), (6).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Florence and the Detention Standards for Remote and In-Person Visitation and Legal Mail.

Florence is a "multi-level security" facility owned and operated by CoreCivic that houses detainees for the U.S. Marshals Service, the U.S. Bureau of Prisons, and several surrounding municipalities. *See* CoreCivic, Central Arizona Florence Correctional Complex, https://www.corecivic.com/facilities/central-arizona-florence-correctional-complex. Through an inter-governmental contract between the U.S. Marshals Service and ICE, ICE may house up to 400 male non-citizen detainees at Florence for criminal and non-criminal reasons. *See* ICE FY23 Detention Statistics, https://www.ice.gov/detain/detention-management. On average, detainees spend 18 days at Florence. *Id.*

Because Florence houses non-citizen detainees under ICE's detention authority, the facility must comply with one of several detention standards that describe a facility's responsibilities, explain the detainee services a facility must provide, and identify what a facility must do to ensure

a safe and secure detention environment for staff and noncitizens in detention. *Detention Management*, U.S. Immigration & Customs Enforcement (available at https://www.ice.gov/detain/detention-management).[1] As set forth in CoreCivic's contract for detention services, the 2008 Performance-Based National Detention Standards ("PBNDS") apply at Florence.[2] *See* SAC ¶ 8.

As relevant here, the 2008 PBNDS have specific requirements regarding attorney access. In-person legal visits "are confidential and shall not be subject to auditory supervision" and "[p]rivate consultation rooms shall be available." PBNDS 2008 5.7(II)(2) and (V)(J)(9). Visits shall be permitted daily for at least eight hours "on regular business days" and four hours "on weekends and holidays." PBNDS 2008 5.7(V)(J)(1) and (2). Legal visits may include attorneys and other legal representatives, assistants, and interpreters. PBNDS 2008 5.7(V)(J)(3). "Staff shall not be present in the confidential area during the meeting," but may visually observe meetings "through a window or camera to the extent necessary to maintain security, as long as staff cannot overhear the conversation." PBNDS 2008 5.7(V)(J)(9)). If the "private conference rooms are in use and the attorney wishes to meet in a regular or alternate visiting room, the request should be accommodated to the extent practicable" and the "meetings should be afforded the greatest degree of privacy possible under the circumstances." *Id*. Legal representatives also must be able to "exchange documents" that "shall be inspected but not read." PBNDS 2008 5.7(V)(J)(10).

For general telephone access, "each facility shall provide at least one operable telephone for every 25 detainees." PBNDS 2008 5.6(V)(A)(1). For legal calls, "each facility shall ensure

---

[1] All websites cited herein were last accessed on September 11, 2023.

[2] The Court suggested that Florence abides by the 2019 NDS. ECF No. 79 at 7 n.4. ICE confirms and Plaintiff agrees, however, that Florence adheres to the 2008 PBNDS. SAC ¶ 8.

privacy by providing a reasonable number of telephones on which detainees can make such calls without being overheard by staff or other detainees." PBNDS 2008 5.6(V)(F)(2). "Privacy may be provided in a number of ways," including telephones with privacy panels (side partitions), telephones placed where conversations may not be readily overheard by others, or office telephones. *Id*. Telephones must be maintained in working order, including designating facility staff for daily inspection and to report issues to facilitate quick repairs. PBNDS 2008 5.6(II)(6), (V)(A)(3) and (4)(a). Detainees must have "reasonable and equitable access to telephones" except "between lights-out and the morning resumption of scheduled activities." PBNDS 2008 5.6(V)(D). The standards do not require facilities to provide wireless and/or internet-based communications.

A facility may not restrict the number or duration of legal calls, "unless necessary for security purposes or to maintain orderly and fair access to telephones." PBNDS 2008 5.6(V)(F)(1)). Time limits "shall be no shorter than 20 minutes, and the detainee [may] continue the call at the first available opportunity, if desired." *Id*. A facility may place reasonable restrictions on "the hours, frequency and duration of [] direct and/or free calls" to ensure orderly and equitable access to phones or for emergencies but may not otherwise limit a detainee's attempt to obtain legal representation. *Id*.

Detainees may send/receive unlimited mail at their own expense and indigent detainees may send legal mail at government expense. PBNDS 2008 5.1(V)(B). Staff shall "neither read nor copy" legal mail and its inspection shall be limited. PBNDS 2008 5.1(V)(F)-(G).

While not required by the 2008 PBNDS, "[l]egal representatives may request video teleconference (VTC) meetings or confidential legal phone calls with their clients or prospective clients by email" or phone. ICE, Central Arizona Florence Correctional Center, Hours of Visitation, available at: https://www.ice.gov/detain/detention-facilities/florence-correctional-

center. Appointments should be requested 48 hours in advance and are available from 8 a.m. to 4:30 p.m. in one-hour increments. *Id*. "The same guidelines for in-person attorney/client visits will apply to virtual legal visits and legal calls." *Id*. "[O]utside interpretation services [may be contacted] during the call or session." *Id*. "The sessions will be confidential; a visitation officer will be stationed outside of the confidential room to ensure security by standing out of earshot but within eyeshot," and "will knock 5 minutes before the cut off time." *Id*.

## II.   Plaintiff's Second Amended Complaint.

On August 11, 2022, Plaintiff filed their SAC alleging two causes of action on behalf of their clients detained at Florence. *See generally* ECF No. 118, SAC. In Count 1, Plaintiff alleges that Defendants' visitation procedures create conditions of confinement equivalent to punishment in violation of its clients' Fifth Amendment substantive due process rights. *Id*. ¶¶ 161-66. In Count 2, Plaintiff alleges that the same procedures violate the rights of its "disabled clients" under Section 504 of the Rehabilitation Act. *Id*. ¶¶ 167-73.

Plaintiff requests that the Court issue a declaratory judgment that Defendants' visitation procedures "violate Plaintiffs' and their clients' rights" as detailed above and further request that the Court order a litany of actions. SAC, Prayer For Relief, pp. 70-73.[3] Critically, Plaintiff does not request any relief related to monitoring or enforcing the attorney-client access standards. *Id*.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and, thus, "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (quotes and citation omitted). "[I]t is presumed that a cause lies outside [the

---

[3] As Plaintiff no longer asserts any claim on its own behalf, SAC ¶¶ 161-73, the Court should not grant any relief with respect to its rights.

federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011).

Under Rule 12(b)(6), a court may dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotes and citations omitted). Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged," *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014), or "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In a Rule 12(b)(6) motion, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.

Cir. 1997) (citation omitted). "[W]here a document is referred to in the complaint and is central to the plaintiff's claim," it "may be considered without converting the motion [to dismiss] to one for summary judgment." *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 217 (D.D.C. 2012) (citation omitted).

## ARGUMENT

The Court must dismiss Plaintiff's SAC under Rule 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff lacks standing. Further, the Court should dismiss Plaintiff's SAC under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### I.   The Court Must Dismiss Plaintiff's SAC Because Plaintiff Lacks Third-Party Standing.

Plaintiff lacks third-party standing to bring claims on behalf of its clients. Article III of the Constitution limits the jurisdiction of federal courts to the adjudication of actual, ongoing cases or controversies; "giv[ing] rise to the doctrine[] of standing." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003). It is well established "that the irreducible constitutional minimum of standing contains three elements": (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

A party "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). While the Supreme Court has recognized that there may be circumstances where it is necessary to grant a third-party standing to assert the rights of another, the Court limited this exception by requiring two additional showings beyond an "injury in fact," which stem from a valuable "rule of restraint." *Craig v. Boren*, 429 U.S. 190, 193-95 (1976). First, "the party asserting the right must demonstrate a 'close' relationship with the person who possesses the right." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). Second, a court

must "determine whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Id*. A plaintiff seeking to assert third-party standing must demonstrate these further showings in addition to the *Lujan* factors. *Id*. at 129-30. Here, Plaintiff fails to establish third-party standing where FIRRP does not demonstrate injury-in-fact or that its clients are hindered from protecting their own rights.

### A.  Plaintiff has not demonstrated an injury in fact.

Plaintiff fails to identify a specific proceeding in which a detained client has been injured by Defendants' challenged procedures. An injury in fact must be "an invasion of a legally protected interest that is 'concrete and particularized,' 'actual or imminent,' and 'fairly traceable' to the challenged act of the defendant, and likely to be redressed by a favorable decision in the federal court." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352, 1357 (D.C. Cir. 2000) (*AILA*) (agreeing with the district court that "the claim that members of the associations might some day be subject to summary removal" was "too speculative" to establish standing).

Here, FIRRP needed to show the effects of the alleged communications restrictions on specific legal proceedings as to specific clients to adequately plead injury. For example, as this Court explained in its Preliminary Injunction Memorandum (ECF No. 79, "PI Memo." at 20), the Court cannot determine whether limited VTC access has impeded a detainee's full-and-fair hearing without considering how that limited VTC access has impeded the outcome of that hearing. Yet in the SAC, Plaintiff again fails to supply declarations from detained clients to substantiate any of the claims. The absence of a pleading about injuries is insufficient to sustain Plaintiff's burden. *See also Hand v. Perez*, Civ. A. No. 14-0880 (BAH), 2015 WL 3534162, at *7 (D.D.C. June 5, 2015) (because "the plaintiff ha[d] not demonstrated any relationship with any known" party

whose rights had been affected by the challenged government action, she lacked third-party standing).

Plaintiff offers two theories of injury: (1) prolonged or unnecessary detention and (2) missed deadlines. Each fails to adequately plead an injury in fact.

As to any claim that Plaintiff's clients are detained longer or unnecessarily due to Defendants' challenged procedures, it is undisputed that its clients are lawfully detained. 8 U.S.C. §§ 1225(b), 1226(a), (c), 1231. Importantly, Congress has expressly prohibited release for individuals detained under §§ 1226(c) or 1231.[4] As the Supreme Court has recognized, such detention may entail some permissible loss of constitutional freedoms. *Turner*, 482 U.S. at 89. Moreover, Plaintiff provides no example of an identified detainee who experienced prolonged or unnecessary detention. None of the information provided by Plaintiff about identified clients supports Plaintiff's contention that clients were denied bond or would have been released sooner due to access to counsel issues stemming from Defendants' visitation procedures. Indeed, none of the examples include any information about the duration of any consequent delay in proceedings. Nor does Plaintiff demonstrate, if release was granted, how the information counsel was allegedly delayed in receiving served as the basis for that grant of release. Without this critical information, Plaintiff merely speculates that its clients might have been detained for a shorter period of time and, thus, might have been injured. This is insufficient to adequately plead injury in fact.

Plaintiff's claim that it misses deadlines due to Defendants' visitation procedures, is similarly insufficiently pleaded to adequately state an injury. For example, Plaintiff posits that "[a]ccess to confidential communication and the ability to exchange legal documents must be

---

[4] For individuals with final administrative removal orders, custody is mandatory during the removal period. Once the removal period has expired, custody becomes discretionary. 8 U.S.C. § 1231(a)(2), (6).

regular and reliable enough that attorneys and clients can discuss and prepare factual and legal matters in sufficient detail before relevant deadlines, immigration interviews, and court appearances." SAC ¶ 12. Yet, Plaintiff fails to cite—much less provide a declaration from—a single identified client detained at Florence who missed a deadline due to an access to counsel issue. *See* SAC ¶¶ 10 ("detained people and their attorneys have missed filing deadlines because of mail delays and the inability to use fax or email to share documents") (citing ACLU, *No Fighting Chance, ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers*, at 7-8 (2022)); 98 ("FIRRP has represented several clients at Florence who have missed critical filing deadlines or have had to ask for continuances in bond proceedings because of excessive delays in mail leaving the facility, leading to unnecessary and prolonged detention."); 99 ("attorneys run the risk of missing important deadlines for Detained Clients' cases if they use mail"); 157 (noting that the "inability to send and receive legal documents in a timely manner is a nationwide problem" and that "Attorneys at 19% of the detention facilities surveyed reported that they or their clients missed a filing deadline due to problems with legal mail."). Instead, Plaintiff relies on an article published by Plaintiff's counsel that supplies no concrete or ascertainable examples on this issue. *Id*. Further, each conclusory assertion only references issues signing documents via mail (in part due to the lack of fax or email), not to counsel's general ability to communicate with its client. *Id*. Tellingly, no allegation explained why an attorney could not visit the client in-person to sign the documents. *Id*.

Accordingly, where Plaintiff has not adequately pleaded an injury to its detained clients "that is 'concrete and particularized,' 'actual or imminent,' and 'fairly traceable' to the challenged act of the defendant," Plaintiff lacks standing, and the SAC must be dismissed. *Navegar, Inc.*, 103 F.3d at 998 (quoting *Lujan*, 504 U.S. at 560–61).

   B.  <u>Plaintiff has not demonstrated a hindrance to its detained clients' ability to protect their own rights.</u>

To assert third-party standing, a litigant also must show a substantial reason why the party is unable to assert their own claims. A party can sue on another's behalf only "if there is some genuine obstacle, [such that] the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent." *AILA*, 199 F.3d at 1362. In *AILA*, the D.C. Circuit quoted Justice O'Connor's explanation that a "hindrance signals that the rightholder did not simply decline to bring the claim on his own behalf but could not in fact do so." *Id.* at 1363 (citing *Miller v. Albright*, 523 U.S. 420, 450 (1998) (O'Connor, concurring)). While this prong "does not require an absolute bar from suit," there must be "some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411. Although the hindrance prong is a "relatively low threshold," Plaintiff still must establish some hindrance to its clients' ability to advance their own claims (of course, with the assistance of counsel). *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533, at *14 (D.D.C. June 17, 2020) (*SPLC I*).

As this Court highlighted, FIRRP has "already demonstrated that their clients were not hindered in bringing suits themselves to challenge their conditions of confinement in the past" and "has [not] explained what has changed." PI Memo. at 22, n.9. Indeed, as the Court identified, FIRRP has represented—and continues to represent—detained individuals at Florence as first-party litigants. PI Memo. at 4, 6 (citing St. John, ECF No. 55-9 ¶ 5). Notably, this representation continued during the COVID-19 pandemic when in-person visitation was limited. *See* PI Memo. at 24, 29.[5] Moreover, Plaintiff alleges that in 2022 FIRRP provided "direct legal representation to

---

[5] While Plaintiff now asserts that they "brought cases only on behalf of detained clients at the Eloy Detention Center and La Palma Detention Center . . . because both facilities allowed them access to schedule phone calls, unlike at Florence," SAC ¶ 44, that argument is undermined by Plaintiff's

27 individuals" at Florence and currently represents "at least two clients in matters related to conditions of conferment." SAC ¶ 17.

Here, Plaintiff's pleadings are speculative and insufficient to meet the hinderance standard. *See Twombly*, 550 U.S. at 555 (explaining a well-pled complaint requires that the facts alleged must be enough to raise a right to relief above the speculative level); *Maxwell v. Leavitt*, No. CIV.A.02-01732 (HHK), 2005 WL 589017, at *6 (D.D.C. Mar. 11, 2005) ("The court is not 'required to speculate that factual propositions unmentioned, or evidentiary links unrevealed,' are among the facts plaintiffs seek to establish at some later date.") (quoting *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 472 (D.C. Cir. 1991)). Plaintiff has not indicated that it approached any of its clients about participating in this lawsuit, despite including first-hand allegations from seven detainees. It is logical that for Plaintiff to show that its detained clients are hindered from bringing a lawsuit as first-party litigants, presumably Plaintiff must allege that FIRRP counsel at least approached some clients about this lawsuit. Otherwise, Plaintiff's assertions about any hinderance are purely speculative and should be rejected.

One of Plaintiff's proffered explanations as to why its detained clients could not bring claims about their alleged inability to access counsel as first-party litigants is that counsel does not have enough time to represent them in federal litigation and immigration matters. SAC ¶ 46. But the relevant question here is not whether FIRRP counsel has sufficient time to represent its clients, but, instead, whether the alleged communications restrictions at Florence prevent detainees from access to counsel. *Cf. SPLC I*, 2020 WL 3265533, at *14 (significant restrictions on in person attorney access due to the COVID pandemic led to conditions of confinement that could hinder

---

numerous assertions that they have scheduled calls with detained clients using Florence's call-back message system. *See* SAC ¶¶ 30, 73, 114, 125, 128.

detainees' participation in an additional lawsuit about their access to counsel may violate the substantive due process clause). But here, Plaintiff may visit detainees in person at Florence pursuant to the normal visiting procedures and also may use VTC for additional visitation.

Plaintiff's general allegation that detained clients "face significant barriers to bringing" a lawsuit against the federal government, SAC ¶ 46, similarly misses the point. Other lawsuits FIRRP has brought with detainees as first-party litigants, *see supra*, pp. 11-12, demonstrate both that Plaintiff's detained clients at Florence are not hindered from bringing a lawsuit as first-party litigants and that Plaintiff can sufficiently communicate with their detained clients to gather facts and evidence to bring a lawsuit (undermining the merits of their current claims). Also, the normal burdens of litigation raised by Plaintiff, SAC ¶ 46, such as limited knowledge of the U.S. legal system, cannot be used to establish standing in this case. *See AILA*, 199 F.3d at 1363-64 ("To the extent there were obstacles or hindrances to any of these individuals joining in the cases, they are either imposed by Congress or result from the normal burdens of litigation.").

Likewise, Plaintiff baselessly asserts that privacy and mootness concerns hinder non-citizens' ability to file this lawsuit as first-party litigants but fails to offer any declarations from detained clients—even anonymously and after relaying allegations from seven detainees—to support such claims. While "fear of retaliation" may, in some circumstances, deter an individual from bringing a lawsuit, and, thus, provide a basis for third-party standing, Plaintiff does not allege here that any individual detained client fears retaliation. SAC ¶ 46. Instead, FIRRP offers only speculation that discussing conditions of confinement "*may* cause . . . retaliation." SAC ¶ 11 (emphasis added); *see also* SAC ¶ 44 ("Detained immigrants challenging conditions of confinement require even greater confidentiality protections in light of *potential* retaliation by facility staff and Defendants.") (emphasis added).

Therefore, because Plaintiff fails to establish either an "injury in fact," or "some hindrance to the third party's ability to protect his or her own interests," Plaintiff has failed to establish third-party standing. Accordingly, this Court should dismiss the SAC. *Lujan*, 504 U.S. at 560; *Powers*, 499 U.S. at 411; Fed. R. Civ. P. 12(b)(1).

## II.   The Court Should Dismiss Plaintiff's SAC for Failing to State a Valid Claim Upon Which Relief May be Granted.

### A.   Plaintiff's Count 1 substantive due process claim fails.

Plaintiff claims that the conditions of confinement at Florence violate the Due Process of Clause of the Fifth Amendment. SAC ¶¶ 161-66. This claim fails because Plaintiff does not plead sufficient facts for Defendants to formulate an informed defense or to establish that the conditions at Florence constitute punishment.

1.   Plaintiff's allegations about the conditions of confinement fail to meet the pleading standard of sufficient notice.

Plaintiff inadequately pleads facts to put Defendants on notice to defend against the claims brought against them. *Twombly*, 550 U.S. at 555. As *Kelleher* provides, although a plaintiff need not show at the pleading stage all that is necessary to prevail at trial, a plaintiff must at least allege sufficient facts "to satisfy Rule 8(a)(2) and *Iqbal*." *Kelleher v. Dream Catcher*, LLC, 263 F. Supp. 3d 322, 325-26 (D.D.C. 2017).

Plaintiff's allegations about the means of communication at Florence are conclusory and do not reference a specific claim. With respect to telephone access, Plaintiff alleges that "attorneys have had no means to schedule a call with Detained Clients." SAC ¶ 72. Not only does Plaintiff acknowledge that this allegation was only applicable prior to the Court's PI Order and Interim Order, but also Plaintiff fails to explain how the lack of its desired phone scheduling system would violate the Constitution. *Id*. Further, Plaintiff fails to allege facts to support its conclusion that the pro bono platform to make "calls to FIRRP is difficult to use because detained people must be

locked down for much of the time when attorneys are available." SAC ¶ 34. Plaintiff's contention

that the pro bono hotline "involves a burdensome registration process" cites an inconvenience to

counsel, not their clients, and their complaint that clients "must enter numerous, lengthy numerical

codes perfectly to successfully place a call," SAC ¶ 87, is overstated. As Plaintiff previously

acknowledged, the hotline can be reached after users make five selections, guided by the automated

system including "dialing 1 for English or Spanish; dialing a designated PIN number; dialing 6 to

enter the Pro Bono Code system; dialing the appropriate code for [FIRRP], and then dialing the

appropriate extension." ECF No. 53, First Amended Complaint ("FAC") ¶ 95. Although five

entries are required, the inconvenience does not necessitate that detainees resort to calling their

attorneys on paid lines or that the government provide free calls out to anyone without restriction.

With respect to in-person visitation, Plaintiff provides "conclusory statements" that are

insufficient to meet its burden. *Iqbal*, 556 U.S. at 678. Plaintiff acknowledges that Florence has

two "private attorney visitation rooms," but alleges that such rooms are inadequate. SAC ¶ 51. To

support this assertion, Plaintiff compares the number of visitation rooms with the maximum

capacity at Florence but does not adequately plead that attorneys have been inhibited from meeting

privately and confidentially with clients due to this ratio.[6] Also, the detention standards do not

impose a set number of visitation rooms. *See* PBNDS 2008 5.7(II)(2) and (V)(J)(9); *see* NDS 2019

5.4(II)(G)(8).[7]

---

[6] While the Court previously found that Florence "has no private rooms in which documents may
be passed between attorney and client," PI Memo. at 7, Plaintiff admits that there are two private
attorney visitation rooms, SAC ¶ 51.

[7] Relatedly, although completed after the filing of the SAC, the Florence facility now has twenty-
four (24) virtual visitation booths available exclusively for ICE detainees to communicate virtually
with their attorneys. *See* ECF No. 120; ICE, Central Arizona Florence Correctional Center, Hours
of Visitation, available at:  https://www.ice.gov/detain/detention-facilities/florence-correctional-
center.

Similarly, Plaintiff asserts that FIRRP counsel are "denied the ability to use the tools of their trade, namely printers and cellular phones" during in-person legal visits but fail to explain how their general inability "to draft or edit documents" in the meeting room during these visits sufficiently pleads a constitutional violation of their detained clients' rights. SAC ¶ 6. With respect to the ability to share documents, Plaintiff alleges that "at Florence, they cannot exchange documents or procure signatures without giving them to a guard, breaching confidentiality." SAC ¶ 67. But the routine screening of a document for contraband before giving that document to a detainee is akin to the routine screening of mail for contraband that has long been upheld as valid to maintain security in a detention setting. *See Deutsch v. United States DOJ*, 881 F. Supp. 49, 54 (D.D.C. 1995). Finally, Plaintiff's allegation that counsel cannot exchange legal documents via fax or email, SAC ¶ 95, likewise fails to show that such preferred technological accommodations are constitutionally required.

## 2. Plaintiff's substantive due process challenge fails to state a valid claim because the conditions described do not constitute punishment.

Plaintiff summarily states that the "conditions of confinement for Detained Clients" "meet [the punishment] standard" and violate due process because they "(1) are identical to, similar to, or more restrictive than those under which persons accused or convicted of crimes are confined; (2) are not reasonably related to legitimate governmental objectives; and/or (3) are excessive in relation to any proffered objective." SAC ¶¶ 164-65. These legal conclusions are unsupported by any declaration from Plaintiff attorneys, criminal defense attorneys, or a detainee. And, again, Plaintiff does not plead sufficient facts to meet its pleading burden. The Court should dismiss the substantive due process claim (Count 1).[8] *See* PI Memo. at 25-26, 30-31, 33.

_____

[8] Declarations Plaintiff submitted with their Preliminary Injunction motion and other filings may not be considered on a Rule 12(b)(6) motion to dismiss. *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.

In any event, each of these allegations fails.[9] Initially, Plaintiff has not sufficiently alleged that Defendants' visitation procedures meet the standard for punishment. To establish that a procedure constitutes "punishment," Plaintiff must show either "evidence of a subjective intent to punish" or "that a restriction is objectively unreasonable or excessive relative to the Government's proffered justification." *United States v. Moore*, No. CR 18-198 (JEB), 2019 WL 2569659, at *2 (D.D.C. June 21, 2019); *see*, *e.g., Block v. Rutherford*, 468 U.S. 576, 589, 591 (1984) (complete ban on contact visits for pre-trial detainees or the search of a detainee's cell without the detainee present did not constitute punishment); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963) ("automatic forfeiture-of-citizenship provisions" constituted punishment); *Flemming v. Nestor*, 363 U.S. 603, 617 (1960) (denial of benefits to deported individual not punishment); *Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893) (deportation not punishment). Here, Plaintiff does not allege a subjective intent to punish and Plaintiff fails to establish an unreasonable or excessive restriction on detainees in relation to the government's justified interests.

First, as this Court noted in its decision on Plaintiff's preliminary injunction motion (PI Motion), "'[c]ourts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" ECF No. 79, PI Memo. at 23, *quoting Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (pretrial context). Most of the additional processes that Plaintiff seeks—creating scheduling systems for remote and in-person visits to avoid wait times; allowing electronics at in-person visits and email or fax to facilitate more efficient drafting and signing of legal documents—

---

[9] Defendants assert that they already provide most of the requested relief but recognize that in a motion to dismiss under Rule 12(b)(6) the Court must take Plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. However, the Court is not required to accept as true conclusory allegations. *Id*. Nor must the Court "accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

may promote convenience to counsel and improve temporal inefficiencies, but their absence does not reflect an unreasonable or excessive restriction on detainees in relation to the government's justified interests. *See*, *e.g., Bell*, 441 U.S. at 530-31, 553, 558-61 (finding that restrictions such as "double-bunking," prohibiting detainees from "receiv[ing] packages from outside the facility containing items of food or personal property, except for one package of food at Christmas," conducting "unannounced searches of inmate living areas at irregular intervals" and body cavity searches "after every contact visit with a person from outside the institution" were not excessive in relation to the government's justified security interests).

Plaintiff has not demonstrated that Defendants' visitation procedures are not reasonably related to legitimate governmental objectives or that such procedures are excessive. To determine whether a procedure is reasonably related to a legitimate governmental objective, courts have considered: (1) whether there is "a valid, rational connection between the [] regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to [detainees];" (3) "the impact accommodation of the asserted constitutional right will have on guards and other [detainees], and on the allocation of [] resources generally;" and (4) "the absence of ready alternatives" (which serves as "evidence of the reasonableness of a [] regulation"). *Turner*, 482 U.S. at 89–91 (quotes and citations omitted). "[I]f a particular condition or restriction of [] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 539.

Plaintiff does not address this second step of the analysis and, instead, conclusively presumes there is no legitimate governmental interest in these procedures. Well-established precedent recognizes, however, that "[e]nsuring security and order at [a detention facility] is a permissible nonpunitive objective." *Bell*, 441 U.S. at 561; *see also Pell v. Procunier,* 417 U.S.

817, 823, 827 (1974); *Kingsley v. Hendrickson*, 576 U.S. 389, 399–400 (2015). As this Court recognized, "the Supreme Court explicitly endorsed [a security] justification" to limit the use of cell phones and computers in detention facilities. PI Memo. at 26-27 (citing *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 332 (2012)).[10] "[T]he effective management of the detention facility . . . is [also] a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Bell*, 441 U.S. at 540.

Plaintiff's remaining requests—for a scheduling system, more confidential meeting rooms, and fax/email capabilities—also overlook the government's non-punitive purpose of ensuring the safety, security, and good order of the facilities and its detainees, employees, and visitors. *See Bell*, 441 U.S. at 538-39, n.20 (explaining there is no constitutional infringement if restrictions are "but an incident of some other legitimate government purpose."). For example, some policies, such as inspecting mail and documents exchanged between an attorney and detainee are in place to prevent contraband from entering the detention facility. *See Deutsch*, 881 F. Supp. at 54. Facility staff reasonably prioritize often-limited resources, space, and time to ensure safe, routine operations. *Bell*, 441 U.S. at 548, n. 30 ("Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. . . . Most [prisons in America] require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and

---

[10] *See* ICE, Central Arizona Florence Correctional Center, Hours of Visitation ("No electronic devices . . . are permitted in the secure areas") (available at https://www.ice.gov/ detain/detention-facilities/florence-correctional-center).

executive branches of government.") (citing and quoting *Procunier v. Martinez*, 416 U.S. 396, 404–05, (1974), overruled by *Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989)). Limitations on administrative services or communication facilitation does not qualify as punishment. *See Bell*, 441 U.S. at 530-31, 553, 558-61. Moreover, Plaintiff's requests can all be achieved by alternate means, such as conducting in-person visits or VTC meetings using the twenty-four (24) virtual visitation booths available at Florence. Thus, Plaintiff cannot show that any of the complained-of procedures is objectively unreasonable or excessive relative to the government's proffered justification. *See Bell,* 441 U.S. at 540 n. 23 ("In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."") (citing *Pell*, 417 U.S. at 827).Further, while civil detainees retain greater liberty protections than individuals convicted of crimes, *see*, *e.g.*, *Youngberg v. Romero*, 457 U.S. 307, 321-22 (1982), the continued immigration detention of Plaintiff's clients pending removal cannot be described as punitive or excessive in relation to the legitimate government purpose of enforcing the immigration laws. *See, e.g., Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[D]etention during deportation proceedings is a constitutionally valid aspect of the deportation process."). Nor does the fact that the requested relief may be available at other detention facilities render the challenged visitation procedures excessive relative to the government's objectives. *See* PI Memo. at 28. As the Supreme Court has noted, "[c]ertainly, the Due Process Clause does not mandate a 'lowest common denominator' security standard, whereby

a practice permitted at one penal institution must be permitted at all institutions." *Bell*, 441 U.S. at 554. Indeed, each facility varies in size, staffing, what types of detainees are housed there (pre-trial, post-conviction, and civil) and Florence houses each of these populations. *See* ICE FY23 Detention Statistics, https://www.ice.gov/detain/detention-management. Furthermore, "[t]his is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90–91. What is possible at one facility may not be possible in another, and that fact alone does not elevate a routine challenge to visitation procedures to a constitutional violation. *Bell*, 441 U.S. at 554.

Next, Plaintiff assumes, relying entirely on hearsay statements from unidentified criminal defense attorneys, that Defendants' visitation processes "are more restrictive than those for people in criminal custody. . . ." SAC ¶ 6 (emphasis omitted). Without specific factual support, Plaintiff claims that these unnamed attorneys report—at neighboring facilities—"availability of private meeting rooms, including for contact visits, where they can conduct confidential visits with clients," *id*. at ¶ 57, that they "are generally able to set up scheduled VTC appointments" that include interpreters, *id*. at ¶ 66, and that they can "meet with their clients directly in the mental health units," *id*. at ¶ 130. But again, as noted *supra*, the availability of a preferred procedure at one facility, does not mean there is a constitutional deprivation at all other facilities. *Bell*, 441 U.S. at 554. Additionally, Plaintiff's bald allegation that Defendants' attorney visitation procedures are more restrictive than those imposed upon unidentified criminal inmates at other facilities, does not equate to sufficient pleading in this case. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) ("we note that nowhere in *Bell* did the Supreme Court suggest that if detainees are treated differently or worse than convicted inmates, they are *ipso facto* being 'punished' in violation of

the Due Process Clause. Rather, the ultimate question under *Bell* is whether 'a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective,'; if so, it is irrelevant whether or not that condition is also imposed upon convicted inmates. Simply put, conditions that are 'comparatively worse' or 'less comfortable' for pretrial detainees than for convicted inmates are not by themselves tantamount to punishment") (citation omitted). These allegations are insufficient to carry Plaintiff's burden to establish that conditions constitute punishment, even at the pleading stage. *See Iqbal*, 556 U.S. at 678 (finding "threadbare recitals" and conclusory statements are not sufficient pleadings); *Papasan*, 478 U.S. at 286 (explaining courts need not "accept as true a legal conclusion couched as a factual allegation.").

Further, Plaintiff's extensive factual citations to visitation policies from various state correctional facilities are irrelevant to the constitutional propriety of the visitation procedures at Florence. SAC ¶ 78, n.30 (identifying 12 states that permit scheduling telephone calls), 100, n.3 (identifying four states that permit fax and/or email). First, immigration detention is authorized under federal law and applicable federal regulations. Second, Plaintiff describes a "nationwide" prevalence of state correctional policies that align with their preferred means of access and communication, but then only identify a small fraction of states with such policies that does not include Arizona. *See id.* Third, Plaintiff does not explain how the state policies permitting attorneys to schedule telephone calls with detainees differs from Florence's call-back message system. The same is true of Plaintiff's allegations that "[s]cheduled phone calls are also available at other immigration detention centers." *Id*. at ¶ 79.

As such, Plaintiff's substantive due process claim fails, and the Court should dismiss it (Count 1). Fed. R. Civ. P. 12(b)(6).

B.  <u>Plaintiff's Count 2 Rehabilitation Act claim fails.</u>

Plaintiff claims that Defendants violate Section 504 of the Rehabilitation Act with respect to their detained clients "with serious mental health conditions or mental disabilities." SAC ¶¶ 107, 172. This claim fails because Plaintiff does not plead sufficient facts for Defendants to formulate an informed defense or to establish that their clients were excluded from accessing counsel, much less that they were excluded "solely" based on their disability.

Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 650 (9th Cir. 2021). To establish a violation of Section 504, a Plaintiff must show that (1) detained clients with disabilities "are disabled[11] within the meaning of the Rehabilitation Act, (2) they are otherwise qualified, (3) they were excluded from, denied the benefit of, or subject to discrimination under a program or activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008); *Fraihat*, 16 F.4th at 650. As this Court has recognized, "Rehabilitation Act claims are particularly 'fact-intensive' and require a searching inquiry into the nature of a plaintiff's disability and the adequacy of proposed accommodations." PI Memo. at 39 (citing *Solomon v. Vilsack*, 763 F.3d 1, 10 (D.C. Cir. 2014); *Brown v. District of Columbia*, 928 F.3d 1070, 1090 (D.C. Cir. 2019) (Wilkins, J., concurring)).

---

[11] An individual is "disabled" "if she can show that she (1) 'has a physical or mental impairment which substantially limits one or more . . . major life activities,' (2) 'has a record of such an impairment,' or (3) 'is regarded as having such an impairment.'" *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008) (quoting 29 U.S.C. § 705(20)(B)).

1. <u>Plaintiff's allegations about their detained clients with disabilities fail to meet the pleading standard of sufficient notice.</u>

Plaintiff's Rehabilitation Act claim fails to provide sufficient information about specific individuals' diagnoses and mental disabilities, or the specific accommodations requested, the specific accommodations that were denied, and the basis for any denial. This lack of specific pleading renders Defendants unable to formulate an informed defense. *See* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555.

Plaintiff must articulate sufficiently particular allegations of fact are designed to enable Defendants to formulate an informed defense. *Twombly*, 550 U.S. at 555. Defendants cannot do so without reliable, accurate information about Plaintiff's clients' mental disabilities and accommodation requests, denials, and the basis for those denials. Yet here, Plaintiff do not offer specific information on any clients' disabilities, how disabling their respective conditions are, the details of prior requests for accommodation(s), and the efforts (if any) by [the facility] to provide any such requested accommodation(s)." PI Memo. at 39. As this Court explained in denying former co-Plaintiff-AIJ's motion for preliminary injunction, AIJ did not establish a likelihood of success on their Rehabilitation Act where they failed to provide "a declaration from any client or doctor describing a particular client's purported disability." PI Memo. at 39. While a motion to dismiss does not address the merits of a Rehabilitation Act claim, the same information is necessary for defendants to formulate an informed defense. *Twombly*, 550 U.S. at 555.

2. <u>Plaintiff's Rehabilitation Act claim fails to state a valid claim because Plaintiff has not established that their clients were excluded from accessing counsel, much less that they were excluded "solely" based on their mental illness.</u>

Beyond the general pleading requirements, the vague allegations Plaintiff provides fail to state a claim under the Rehabilitation Act. Fed. R. Civ. P. 12(b)(6); Rehabilitation Act of 1973, § 504(a), 29 U.S.C. § 794(a). Plaintiff broadly claims that Defendants violate Section 504 of the

24

Rehabilitation Act with respect to their disabled detained clients because, allegedly, "Defendants have unlawfully excluded [those clients] from and denied them the benefit of access to counsel, and subjected them to discrimination on the basis of disability because certain barriers to counsel . . . have specifically and especially affected" them. SAC ¶ 172. This claim fails for three reasons. First, Plaintiff has not alleged that any of its clients were excluded from, denied the benefit of, or subject to discrimination under a program or activity. *See Am. Council of the Blind*, 525 F.3d at 1266. Second, Plaintiff has not plausibly alleged that Defendants failed to consider "reasonable accommodations." *Alexander v. Choate*, 469 U.S. 287, 304 (1985). Third, Plaintiff does not show that any exclusion was based "'solely by reason' of [its clients'] alleged disabilities." *Fraihat*, 16 F.4th at 650 (citing 29 U.S.C. § 794(a)).

                    i. Plaintiff has not shown that FIRRP's detained clients with disabilities were excluded from, denied the benefit of, or subject to discrimination under a program or activity because Plaintiff's allegations show that its clients had access to counsel.

Plaintiff's general allegations that detained clients are excluded from, denied the benefit of, or subject to discrimination under a program or activity fail to state a claim under the Rehabilitation Act. Plaintiff claims that FIRRP clients with disabilities who "experience suicidal ideation" are "often" placed into medical units or observation that may limit telephone use and do not have "clearly established procedures regarding in-person" visits. SAC ¶¶ 122-23. Notably, Plaintiff does not allege that there is a ban on access under these circumstances, only that access may be limited and that the procedures lack clarity.

Yet, Plaintiff's second amended complaint supplies numerous examples of detained clients with disabilities communicating with counsel while in mental health observation (albeit not always in an on-demand manner). Initially, Plaintiff only alleges that Jose and Pedro were housed in mental health observation. SAC ¶¶ 30, 32, 117. During the time Jose was detained, Plaintiff alleges

that they spoke to him three times via telephone using "Florence's call-back message system," SAC ¶¶ 30, 113, and at least once in person after "obtaining specific advance approval for the visit" from Jose's Deportation Officers and "the medical staff at Florence," *id*. at 114-15.[12] During the four-and-a-half months Pedro was detained, Plaintiff alleges that counsel visited him in person at Florence twice and four additional times at other facilities. *Id*. at 117.[13] Other requests for in-person visitation with Pedro were denied because "he was in mental health observation and either would not or could not come to visitation at FCC or because he likewise *refused* to attend court or other appointments at the nearby Florence Detention Center, where the Immigration Court is located." *Id*. (emphasis added). Thus, these denials cannot be attributed to Defendants' actions, but were caused by Plaintiff's client's refusal to meet with counsel. The second amended complaint also alleges that FIRRP sent messages to Pedro using Florence's call-back message system, but Pedro did not call back. *Id*. at 118. These allegations demonstrate that these clients had access to counsel while in mental health observation.

For the remaining identified clients with disabilities, Plaintiff has not alleged that Mateo was housed in any special unit and solely alleged that Mugisha was possibly housed in segregation. *Id*. at 35, 65. According to Plaintiff, Mugisha was detained at Florence from "early 2023" until he

---

[12] Plaintiff's contention that they were "consistently informed after they arrived to the facility for the in-person visits that Jose would not be brought to visit because he was in medical observation," SAC ¶ 114, overlooks the reality that individuals, like Jose, who experience severe mental illness may exhibit symptoms post-visitation-approval that necessitate re-scheduling the visit to ensure his own safety and the safety and security of counsel, other detainees, and staff.
*See* PBNDS 2008 4.22(V)(K)(5) (Medical Isolation); *see, e.g.*, SAC ¶¶ 35, 112, 116.

[13] According to Plaintiff, Pedro was detained at Florence from "early 2023 for five months," but was "initially referred" to FIRRP's services on October 22, 2022, and they last spoke to him on December 1, 2022. SAC ¶¶ 31-32. Plaintiff does not specify how long Pedro spent in mental health observation, but he was released from detention on bond on April 5, 2023. Thus, at most, it appears that Pedro was detained for approximately four-and-a-half months.

was released on bond on April 5, 2023. SAC ¶ 25. During those approximately three months, Plaintiff alleges that they visited Mugisha in-person and that Mugisha "noted that sometimes detained people receive a message from the detention center telling them to call their lawyers" but that detainees found "the phone system [] too confusing." SAC ¶ 73. Further, Mugisha's attorney left him a message and Mugisha attempted to call him back but, as Plaintiff alleges, Mugisha tried to ask the staff for help due to his language barrier[14]—he only spoke French—but the housing manager shouted at him. *Id*. Plaintiff does not expound on this interaction or claim that Mugisha was never able to call his attorney. Mugisha's only other complaints were that "interpretation was more difficult in segregation because it requires passing a cellphone across a glass divider," *id*. at 65, and that generally, in-person visits and calls were "difficult" due to noise in the nearby hallway and poor phone sound quality for interpreters, SAC ¶¶ 28, 54. But none of these complaints related to Mugisha's language skills implicate a mental disability and, therefore, do not support a Rehabilitation Act claim.

According to Plaintiff, Mateo was detained at Florence from "January to October 2022," though Plaintiff did not begin representing him until February 2022. SAC ¶ 35. *Id*. Thus, at most, Plaintiff represented Mateo in detention for approximately nine months. Plaintiff does not allege that Mateo was housed in mental health observation or segregation. *Id*. During those months, Plaintiff alleges that they visited Mateo three times in-person and that the facility staff reported that he refused all other in-person visits and telephone calls. *Id*. Thus, as with Pedro, these denials

---

[14] At Florence, the procedures for scheduling telephone calls and visitation rooms are available in the English and Spanish and posted on bulletin boards in the ICE housing units. *See* ECF No. 66-1 at ¶ 11. Furthermore, VTC and legal phone calls are now available at Florence via the new virtual visitation booths. *See* ICE, Central Arizona Florence Correctional Center, Hours of Visitation, available at: https://www.ice.gov/detain/detention-facilities/florence-correctional-center. Florence staff will set up the communication, instructions for scheduling the booths is available in French and 12 other languages, and attorneys may include interpreters. ECF No. 120-1, Exhibit 1.

cannot be attributed to Defendants' actions, but appear to have been caused by Plaintiff's client's refusal to communicate with counsel either.

Therefore, taking Plaintiff's allegations in context, they have not sufficiently alleged that their clients were excluded from accessing counsel while detained at Florence outside of mental health observation.

### ii. Plaintiff has not plausibly alleged that Defendants failed to consider "reasonable accommodations."

Plaintiff acknowledges that Defendants provide accommodations but asserts that the accommodations are insufficient. SAC ¶ 32. This fails to state a claim under the Rehabilitation Act where Plaintiff's allegations show that Defendants have considered and agreed to reasonable accommodation requests.

"The Act does not . . . guarantee [individuals with disabilities] equal results" with regard to federally funded services. *Alexander*, 469 U.S. at 304; *Modderno v. King*, 82 F.3d 1059, 1061 (D.C. Cir. 1996) (explaining that "inequality" between "those disabled by mental illness and persons disabled only by physical impairments or not disabled at all" is not "the sort of harm the Rehabilitation Act was intended to redress") (citing *Alexander*, 469 U.S. at 304). Rather, it requires that "an otherwise qualified [individual with a disability] must be provided with meaningful access to the benefit that the [federal executive agency] offers." *Id.* at 301. "[T]o assure meaningful access, reasonable accommodations in the [federal agency's] program or benefit may have to be made." *Id.*

Initially, Plaintiff's allegations about Defendants' alleged failure to accommodate FIRRP requests are also too general to meet their pleading burden. Fed. R. Civ. P. 8(a). Plaintiff alleges that while they have "requested accommodations[,] such as permission to see Detained Clients with Disabilities in the medical unit, facility transfers, or scheduled and facilitated phone calls[,]

Florence *generally* does not provide these accommodations." SAC ¶ 128 (emphasis added); *see also* SAC ¶¶ 48 ("Defendants' restrictions on access to counsel pose specific challenges to Detained Clients with disabilities, and Defendants do not ensure that reasonable accommodations are made."); 126 ("Defendants *rarely* provide any *specific* information about the alleged [detainee's] refusal and they have declined to offer possible accommodations") (emphasis added). These general allegations do not show that Defendants denied proper requests for reasonable accommodations related to a disability or that Defendants failed to provide proper reasoning and justification for any denial of Plaintiff's request. *See, e.g.*, *Stewart v. St. Elizabeths Hosp.*, 593 F.Supp. 2d 111, 114 (D.D.C. 2009) (granting the defendant's motion for a judgment as a matter of law on Rehabilitation Act claim due to lack of evidence about "what happened with [the plaintiff's] request for reassignment," or "that she followed up further with Defendant or made any other attempts to secure a reasonable accommodation from Defendant," and where plaintiff failed to show "what actions, if any, Defendant took (or did not take or would have taken). . . .").

Plaintiff's cited examples of allegedly requested or denied accommodations fare no better. Plaintiff alleges that the accommodations that they have requested "include clearly established procedures for attorneys to visit with clients in medical, isolation, or segregation units, contact or video visits where clients can communicate with attorneys face-to-face, as well as additional time to communicate given mental disabilities," "facility transfers, or scheduled and facilitated phone calls." SAC ¶¶ 127-28. A review of Plaintiff's second amended complaint shows that each of these accommodations have been provided when it was reasonable to do so.

Defendants' visitation procedure for clients housed in special units are described in Plaintiff's own allegations. As Plaintiff explains, "FIRRP was able to meet with a client on mental health watch" after "obtain[ing] separate approval from ICE . . . outside of the normal

visitation scheduling process," SAC ¶ 128, "from [their client's] Deportation Officers," and "the medical staff at Florence," SAC ¶ 115.[15] Thus, Plaintiff's complaint that the two-step process of obtaining advance approval from Defendants and the medical staff is belied by Plaintiff's own factual pleadings that FIRRP counsel successfully visited clients after following this procedure. SAC ¶¶ 114-15, 128.

Plaintiff's other allegation that this procedure is insufficient also fails. Plaintiff contends that one meeting occurred after "nearly a month of advocacy and visitation attempts," SAC ¶ 128, but, tellingly, does not assert that the prior "advocacy" and "attempts" adhered to the appropriate procedure or were improperly denied. *See Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1308-09 (D.C. Cir. 2010) (defendant "did not deny an accommodation" based on the plaintiff's mental illness where he "said he would try to assist [the plaintiff] as soon as she submitted the necessary paperwork.").

Next, Plaintiff avers that an attorney "had to push Florence staff to actually bring her client to visitation," SAC ¶ 128, *see* SAC ¶ 115, but this averment is too vague and omits critical information about why the client was not brought to visitation. As Plaintiff has also alleged, sometimes clients refuse to meet with counsel, SAC ¶¶ 35, 117, and it is more than reasonable to re-schedule a visit when a client is experiencing extreme symptoms of a severe mental illness such as "squatting while facing the wall of his cell while rocking back and forth, lying naked in his cell, and rolling balls of feces over the floor," SAC ¶ 112, *see also* SAC ¶¶ 35 ("Mateo presents with

---

[15] These facts are nearly identical to those alleged about Plaintiff's identified client Jose and likely refer to the same incident. *See* SAC ¶ 115. Plaintiff's further contentions that they "could not pass any documents or obtain signatures" during this visit, *id.*, ignores the facility's policy that documents may be passed after a brief inspection by a guard, 2008 PBNDS 5.32(V)(J)(10), and their allegation that a "guard remained directly outside the door through the entire visit," SAC ¶ 115, and, thus, was available to assist.

symptoms including auditory hallucination, delusion, and incoherence in his thought process");
116 (Pedro observed to "attempt self-harm by banging his head and creating a noose from
clothing," "apparently responding to internal stimuli speaking to himself, threw and smeared feces,
and had some expression of bizarre delusions"). Plaintiff further alleges that one request to visit
Pedro "cell-side" was denied, but Plaintiff does not explain the basis for the denial or if and how
a "cell-side" visit was a reasonable accommodation. *Id.* at ¶ 117. Accordingly, based on the
allegations in Plaintiff's second amended complaint, Defendants have a clear procedure to visit
detainees in special units and permit visits when it is reasonable to do so.

Next, Plaintiff erroneously alleges that Florence does not have a system to schedule and
facilitate attorney-client calls, SAC ¶ 122, but then acknowledges that FIRRP counsel have
successfully communicated with their detained clients with disabilities using Florence's call-back
message system, *see* SAC ¶¶ 30, 73, 114, 125, 128. Plaintiff also makes multiple factual assertions
that Florence staff have delivered messages to detainees and have assisted clients in calling counsel
in this exact manner or tried to assist clients who refused, *id.* at ¶¶ 30 (FIRRP counsel successfully
"communicate[d] with Jose through Florence's call-back message system three times"),
114 (a medical staff member assisted Jose in making a call).

This demonstrates that Florence's call-back message system worked and that FIRRP was
able to communicate with Jose.[16] Moreover, Plaintiff's allegations do not sufficiently address the
outcome of any accommodation request and, instead, simply allege that "neither ICE nor facility

---

[16] Any contention that communication required "numerous attempts" and making
"accommodation requests on various occasions," SAC ¶ 114, are too vague to undermine the fact
that detained clients with disabilities have access to counsel. Moreover, such contentions do not
establish how many attempts were made, whether successful calls are included in the "numerous"
count, and the result of any attempts, including any basis for denial. Such facts are essential to
evaluate if Plaintiff's requests were reasonable and, if denied, if they were denied on a reasonable
basis.

staff provided the accommodations necessary to ensure access to counsel," without offering what accommodations were necessary or if Defendants provided a sufficient explanation as to why they could not accommodate any such requested reasonable accommodations. The allegations about Pedro suffer from similar deficiencies. Plaintiff alleges that "FIRRP has never been able to successfully communicate with Pedro via Florence's phone message system, despite several attempts" and that "none of the accommodations agreed upon by the facility were sufficient to ensure access to counsel." SAC ¶ 32. Again, allegations about "several attempts" to communicate and "numerous accommodations requests" are insufficient to meet Plaintiff's pleading burden. Furthermore, Plaintiff admits that Defendants "agreed" to accommodations, but claims that those were insufficient, without detailing what accommodation was requested, what accommodation was agreed upon, and why the agreed upon accommodation was insufficient. Additionally, as previously noted, Pedro refused to attend in-person meetings with counsel, SAC ¶ 117, so he may have refused to call counsel as well. In any event, Plaintiff does not supply sufficient factual allegations that any of the specifically identified clients were excluded from attorney access due to their mental disability. Overall, Plaintiff's allegations are insufficient to establish a violation of the Rehabilitation Act.

The only accommodation request Defendants appear to have denied was not a reasonable request. Plaintiff requested that "staff provide Pedro with assistance and *encouragement* to make a phone call" and "go to the housing unit to explain and *convince* Pedro to attend [an in-person] legal visit." SAC ¶ 118 (emphasis added). Encouraging a detainee to make a phone call or convincing him to attend an in-person visit is entirely outside of Defendants' responsibilities, is inappropriate, could be viewed as interfering with the attorney-client relationship, and constitutes an unreasonable accommodation. The Rehabilitation Act only requires that "an otherwise qualified

32

[individual with a disability] must be provided with meaningful access to the benefit that the [federal executive agency] offers." *Alexander*, 469 U.S. at 301. Meaningful access does not mean convincing or encouraging or coercing detainees to use a benefit—here, to communicate with counsel. Meaningful access means creating the opportunity for clients with mental disabilities to communicate with counsel if they choose to do so by reminding them of when visits are scheduled and escorting or connecting them to the visits, as Defendants already do. *See* SAC ¶ 114; *see also Alexander*, 469 U.S. at 301 ("to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.").

With respect to Plaintiff's request for "contact or video visits where clients can communicate with attorneys face-to-face," SAC ¶ 127, as noted above, Plaintiff's allegations demonstrate that they have been able to meet with their detained clients with disabilities face-to-face, SAC ¶¶ 35, 37, 114-15, 117. And as noted *supra*, VTC and legal phone calls are now available through the virtual visitation booths, ICE, Central Arizona Florence Correctional Center, Hours of Visitation, available at:   https://www.ice.gov/detain/detention-facilities/florence-correctional-center, ECF Nos. 120-120-1. Therefore, these claims are moot. *See Green v. D.C.*, No. CIV.A. 05-550(CKK), 2006 WL 1193866, at *9 (D.D.C. May 2, 2006) (cases are "often" moot "where there is '[c]orrective action by an agency,' which is 'one type of subsequent development that can moot a previously justiciable issue.'") (quoting *Nat'l Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n,* 680 F.2d 810, 814 (D.C. Cir. 1982) and citing *Comm'r v. Shapiro, 424 U.S.* 614, 622–23 n. 7 (1976)).[17]

_____

[17] Regardless, Plaintiff provides no legal support for the proposition that in-person visitation or VTC falls within the Act's purview of providing individuals with disabilities an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007). And Plaintiff offers no evidence that VTC access is a reasonable accommodation to assist disabled persons to

Next, Plaintiff has not shown that FIRRP's requests to transfer clients to other facilities for visits, SAC ¶¶ 127-28, have been reasonable or appropriate. In any event, Plaintiff acknowledges, in "one instance" FIRRP's request to have "Pedro transferred to the Florence Detention Center, another nearby ICE facility, for legal visits" was granted. SAC ¶ 118. But many factors must be considered before transferring a detainee to another facility, even just for the day, including the safety and security of the detainee, other detainees, counsel, and the staff at both facilities. *See* PBNDS 2008 7.41(V)(A) (Reasons for Transfer). This is especially true for detainees who suffer from severe mental illness as transfers between detention facilities may be disruptive and the detainee may refuse to be transported. *See* PBNDS 2008 4.22(V)(U)(4)(a) (Medical/Psychiatric Alert) (recognizing need to notify where medical staff "determine that a detainee's medical or psychiatric conditions require: [c]learance by the medical staff prior to release or transfer, or [m]edical escort during . . . transfer); 7.41(V)(D)(6)(d) (Medical or Psychiatric Alert) (same). For instance, despite the one transfer, FIRRP admits that its other requests to "have Pedro transferred to . . . another nearby ICE facility" were denied because "*Pedro refused* to attend court or other appointments at the nearby Florence Detention Center, where the Immigration Court is located." SAC ¶¶ 117-18 (emphasis added).

Further, while Plaintiff asserts that "additional time to communicate given mental disabilities" is necessary, SAC ¶ 127, they do not allege that Defendants have denied a request for additional time. Thus, they have not adequately pled that Defendants denied a potentially reasonable accommodation.

---

communicate with counsel or that it is required, only that is "often essential" and "helpful for their attorneys to be able to see them." SAC ¶ 127. These allegations simply do not state a claim under the Rehabilitation Act.

<u>iii. Plaintiff does not show that any alleged exclusion was based "solely by reason" of their clients' disabilities.</u>

Plaintiff does not allege that Defendants treat detained clients with disabilities any different than other immigrant detainees at Florence with respect to attorney access at all, let alone "'solely by reason' of [their clients'] alleged disabilities." *Fraihat*, 16 F.4th at 650 (citing 29 U.S.C. § 794(a)). There are no allegations that detained clients with disabilities are more restricted from using telephones or having in-person visits with counsel solely because ICE discriminates against them because they have a mental illness, only that these clients *experience* these means of access to counsel differently from other detainees as a result of their mental disabilities. *See* SAC ¶ 111. This different experience based on mental illness is not related to Defendants' conduct. Again, the Rehabilitation Act only requires meaningful access to the same federal benefits regardless of if individual is disabled. Thus, Plaintiff has "not show[n] they were treated differently from other detainees or not provided meaningful access 'solely by reason' of their disabilities." *Id*. (citing *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013)). Therefore, their Rehabilitation Act claim should be dismissed.

In sum, Plaintiff has failed to show that its detained clients with disabilities have been excluded from accessing counsel or that Defendants failed to consider any reasonable accommodation request. Plaintiff has not shown that any alleged denial of benefits has been "solely by reason" of their clients' disabilities. *Id*. Thus, Plaintiff fails to state a claim upon which relief can be granted and the Court should dismiss the Rehabilitation Act claim (Count 2).

## <u>CONCLUSION</u>

The Court should dismiss Plaintiff's SAC for lack of subject-matter jurisdiction and failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

Dated: September 13, 2023                           Respectfully Submitted,

BRIAN M. BOYNTON                                    /s/ *Jordan K. Hummel*
Principal Deputy Assistant Attorney General         Trial Attorney
                                                    Department of Justice, Civil Division
                                                    Office of Immigration Litigation,
WILLIAM C. PEACHEY                                   District Court Section
Director, District Court Section                    P.O. Box 868, Ben Franklin Station
Office of Immigration Litigation                     Washington, D.C. 20044
                                                    Telephone: (202) 598-8175
LAUREN E. FASCETT                                   Email: jordan.hummel@usdoj.gov
Senior Litigation Counsel

                                                    *Counsel for Defendants*