IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT**, <br><br> *Plaintiff*, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, et al., <br><br> *Defendants*. | No. 1:22-cv-03118 (CKK) |

**IMMIGRATION REFORM LAW INSTITUTE'S
[PROPOSED] BRIEF OF AMICUS CURIAE IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Gina M. D'Andrea (D.C. Bar No. 1673459)
Christopher J. Hajec (D.C. Bar No. 492551)
Immigration Reform Law Institute
25 Massachusetts Ave NW, Suite 335
Washington, DC 20001
202.232.5590
gdandrea@irli.org

Counsel for *amicus curiae* Immigration Reform Law Institute

i

## **DISCLOSURE STATEMENT**

Pursuant to LCvR 7(o)(5) and Fed. R. App. P. 29(a)(4), *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute, whose mission is: to defend responsible immigration policies in court, before administrative agencies, and before legislative bodies on behalf of the American people; to serve as a watchdog to safeguard against abuses of power; and to educate the American people about the threat of unchecked mass migration to themselves and their communities.

# **TABLE OF CONTENTS**

DISCLOSURE STATEMENT ........................................................................................................ ii

TABLE OF CONTENTS ............................................................................................................... iii

TABLE OF AUTHORITIES ......................................................................................................... iv

ARGUMENT .................................................................................................................................. 1

   I.   PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM

       UPON WHICH RELIEF CAN BE GRANTED. ........................................................... 1

      A.   Plaintiff has not stated a viable substantive due process claim. ....................... 2

CONCLUSION .............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Ams. for Immigrant Just. v. United States Dep't of Homeland Sec.*, Civil Action No. 22-3118 (CKK), 2023 U.S. Dist. LEXIS 17017 (D.D.C. Feb. 1, 2023) .................................................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................ 5

*Ashtari v. Pompeo*, 496 F. Supp. 3d 462 (D.D.C. 2020) ................................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 5

*Bell v. Wolfish*, 441 U.S. 520 (1979) .................................................................................... 7, 8, 11

*Block v. Rutherford*, 468 U.S. 576 (1984) .................................................................................... 10

*C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020) .................................................................. 6, 7

*Demore v. Kim*, 538 U.S. 510 (2003) ............................................................................................. 6

*DeShaney v. Winnebago Cnty. Dep't of Social Serv.*, 489 U.S. 189 (1989) ................................... 6

*Fernandez-Fajardo v. INS*. 193 F. Supp. 2d 877 (M.D. La. 2001) ................................................ 6

*Frost v. Symington*, 197 F.3d 348 (9th Cir. 1999) ......................................................................... 9

*Gaines v. Lane*, 790 F.2d 1299 (7th Cir. 1986) ........................................................................... 11

*Hardy v. District of Columbia*, 601 F. Supp. 2d 182 (D.D.C. 2009) ............................................ 6

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ............................................................................... 6

*Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977) .............................................. 10

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) ............................................................................. 7

*Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) ...................................................................... 10

*Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir. 1999) .......................................................................... 9

*Prison Legal news v. Columbia Cty.*, 942 F. Supp. 2d 1068 (D. Or. 2013) .................................. 9

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................ 6

*Rocio Del Carmen R. v. Decker*, Civil Action No. 20-3875 (ES), 2020 U.S. Dist. LEXIS 74172 (D.N.J. Apr. 28, 2020) .................................................................................................. 8

*S. Poverty Law Ctr. v. United States Dep't of Homeland Sec.*, Civil Action No. 18-0760 (CKK), 2023 U.S. Dist. LEXIS 43726 (D.D.C. Mar. 15, 2023) ................................................ 6

*Schmidt v. United States Capitol Police Bd.*, 826 F. Supp. 2d 59 (D.D.C. 2011) ......................... 5

*Turner v. Safely*, 482 U.S. 78 (1987) ........................................................................................... 10

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ................................................................................... 6

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................................................... 7, 8

**Statutes**

8 U.S.C. § 1182(a) .................................................................................................................. 7

8 U.S.C. § 1225(b)(1)(A)(i) .................................................................................................... 7

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ........................................................................................... 7

8 U.S.C. § 1227(a) .................................................................................................................. 7

8 U.S.C. § 1231(a)(2) .............................................................................................................. 8

8 U.S.C. § 1231(g) ................................................................................................................ 11

**Other Authorities**

*Detention Management*, Immigration and Customs Enforcement, available at
  https://www.ice.gov/detain/detention-management. Florence is subject to the 2008
  Performance-Based National Detention Standards ............................................................. 9

ICE Detention Standards, Fact Sheet, Feb, 24, 2023, *available at*
  https://www.ice.gov/factsheets/facilities-pbnds ................................................................ 11

PBNDS 2008 5.1 ..................................................................................................................... 9

PBNDS 2008 5.6 ..................................................................................................................... 9

PBNDS 2008 5.7 ..................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 5

## ARGUMENT

Plaintiff, the Florence Immigrant and Refugee Rights Project ("FIRRP"), brings the present challenge on behalf of itself and its alien clients detained at the Florence Correctional Center ("Florence") in Arizona. FIRRP alleges that the conditions of confinement violate the Fifth Amendment rights of its clients. ECF 118, Second Amended Complaint. Specifically, they claim that the procedures for telephone calls, video telecommunications, legal mail, and in-person visits violate their clients' right to access their counsel under the Due Process Clause of the Fifth Amendment. FIRRP also alleges that the rights of its disabled clients are being violated under the Rehabilitation Act. Defendant seeks dismissal of Plaintiff's second amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 121-1, Motion to Dismiss. IRLI supports Defendants' arguments on standing and adds the following regarding Plaintiffs' substantive due process claim.

**I.    PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim upon which relief can be granted.'" *Ashtari v. Pompeo*, 496 F. Supp. 3d 462, 467 (D.D.C. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007)). "A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains a 'short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Schmidt v. United States Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). This requires "the plaintiff . . . provide 'more than an unadorned, the defendant-unlawfully-harmed-me accusation[.]" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

1

### A. Plaintiff has not stated a viable substantive due process claim.

To begin with, it should be noted that "immigration detention is presumptively constitutional." *S. Poverty Law Ctr. v. United States Dep't of Homeland Sec.*, Civil Action No. 18-0760 (CKK), 2023 U.S. Dist. LEXIS 43726, at *10 (D.D.C. Mar. 15, 2023) (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 843-44 (2018)). *See also Demore v. Kim*, 538 U.S. 510, 523 (2003) (explaining that the Supreme Court has "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."). Accordingly, "[i]mmigration detention itself has never been considered punishment, but a necessary incident of enforcing the immigration laws." *Fernandez-Fajardo v. INS*. 193 F. Supp. 2d 877, 880 (M.D. La. 2001).

Despite its presumptive constitutionality, immigration detention is subject to certain limitations. "When the Government 'takes a person into its custody and holds [her] against [her] will, the Constitution imposes upon it a corresponding duty to assume some responsibility for [her] safety and general well-being[.]" *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 210 (D.D.C. 2020) (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Serv.*, 489 U.S. 189, 199-200 (1989)) (alterations original). Because immigration detention is "undisputedly civil—*i.e.*, non-punitive in nature[,]" *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 187 (D.D.C. 2015), alien detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). *See also C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 210 (D.D.C. 2020) ("Because civil immigration detainees, like pretrial criminal detainees, have not been convicted of any present crime, they 'may not be subjected to punishment of any description.'") (quoting *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 188 (D.D.C. 2009)).

"To assess whether the conditions of confinement violate[] due process, courts consider whether the conditions 'amount to punishment of the detainee.'" *C.G.B.*, 464 F. Supp.3d at 210 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). If an alien detainee can "establish[] that the conditions of confinement . . . are equal to or worse than the conditions experienced by" convicted criminals, it "shifts to defendant to establish that the conditions are rationally related to a non-punitive purpose and those conditions are not excessive." *Ams. for Immigrant Just. v. United States Dep't of Homeland Sec.*, Civil Action No. 22-3118 (CKK), 2023 U.S. Dist. LEXIS 17017, at *39 (D.D.C. Feb. 1, 2023). Thus where, as here, there is no "showing of an expressed intent to punish . . . . [t]he relevant inquiry . . . is whether the" challenged conditions satisfy the rational relation test. *C.G.B.*, 464 F. Supp.3d. at 211 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 298 (2015)). The visitation standards at issue in this case satisfy this test and thus do not constitute conditions that amount to punishment.

As this Court has recognized, "[t]he Government plainly has a legitimate interest in the enforcement of immigration laws, which is furthered by detaining certain noncitizens." *C.G.B.*, 464 F. Supp. at 211. *See also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (explaining that detention of aliens during removal proceedings is "nonpunitive in purpose and effect"). In fact, immigration detention is an essential part of the removal scheme enacted by Congress in the Immigration and Nationality Act ("INA"). The INA specifies that numerous classes of aliens are inadmissible or removable, including aliens who attempt illegal entry, commit certain crimes, violate the terms of their status (visa overstays), obtain admission through fraud or misrepresentation, vote unlawfully, are likely to become a public charge, and whose work would undermine the wages or working conditions of American workers. *See generally* 8 U.S.C. §§ 1182(a), 1227(a). Inadmissible aliens are generally required to be detained during expedited

3

removal proceedings, where they may present a claim for asylum or other relief from removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), 1225(b)(1)(B)(iii)(IV), 1226(a). Additionally, Congress determined that every alien subject to a final order of removal must be detained pending such removal. 8 U.S.C. § 1231(a)(2).

Immigration detention serves the government's enforcement objectives by ensuring that aliens attend their proceedings and by facilitating the removal of those aliens with final orders of removal. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (explaining that the purpose of detention is "assuring the alien's presence at the moment of removal."); *Rocio Del Carmen R. v. Decker*, Civil Action No. 20-3875 (ES), 2020 U.S. Dist. LEXIS 74172, at *36 (D.N.J. Apr. 28, 2020) ("The government has a legitimate interest in detaining immigrants who are subject to removal proceedings to ensure that they will not abscond or endanger the community pending removal proceedings, and to ensure that they appear for those proceedings."). The use of immigration detention necessarily requires rules and procedures for the operation of detention facilities. Accordingly, "[i]t is enough simply to recognize that in addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Bell v. Wolfish*, 441 U.S. 520, 540 (1979).

The effective management of detention centers requires balancing the right of detainees to nonpunitive conditions with the safety and operational objectives of the federal government. To ensure non-punitive conditions, the operation of immigration detention facilities is required to be in "comp[iance] with one of several sets of detention standards which describe a facility's immigration detention responsibilities, explain what detainee services a facility must provide, and

identify what a facility must do to ensure a safe and secure detention environment[.]" *Detention Management*, Immigration and Customs Enforcement, available at https://www.ice.gov/detain/detention-management. Florence is subject to the 2008 Performance-Based National Detention Standards ("PBNDS").

The PBNDS contains several provisions to ensure detainees have access to attorneys. These procedures require unsupervised visits with attorneys during which the exchange of documents—which have been inspected but not read—between an attorney and their detained client is permitted. PBNDS 2008 5.7. Privacy for legal calls can provided in several ways including private rooms, privacy panels, and office telephones. PBNDS 2008 5.6. Outside of reasonable restrictions on "the hours, frequency, and duration of" calls between an alien detainee and his counsel, facilities are not permitted to restrict legal calls "unless necessary for security purposes or to maintain orderly and fair access to telephones." PBNDS 2008 5.6. Detainees are also entitled to send and receive mail privately, subject to inspection by detention center staff. PBNDS 2008 5.1.

A rational relationship exists between policy and objective where there is "'an intuitive, common[-]sense connection' between the . . . policy and its objectives.'" *Prison Legal news v. Columbia Cty.*, 942 F. Supp. 2d 1068, 1082 (D. Or. 2013) (quoting *Frost v. Symington*, 197 F.3d 348 (9th Cir. 1999)). Accordingly, it is not necessary for Defendants to

> prove that . . . banned materials, [such as cell phones,] actually caused problems in the past, or that the materials are 'likely' to cause problems in the future. *See Thornburgh*[ *v. Abbott*], 490 U.S. [401,] 417 [(1989)]; *Casey*[ *v. Lewis*], 4 F.3d [1516,] 1521 [(1993)]. Moreover, it 'does not matter whether we agree with' the defendants or whether the policy 'in fact advances' the jail's legitimate interests. *See Amatel*[ *v. Reno*], 156 F.3d [192,] 199 [(D.C. Cir. 1998)]. The only question that we must answer is whether defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests. *See id*.

*Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999).

Defendants' phone, mail, and visitation procedures have a "valid rational connection" to the "internal security of [their] detention facilit[ies] [that] is . . . obvious." *Block v. Rutherford*, 468 U.S. 576, 586 (1984). The purpose they serve—the safe and effective management of the detention facility—is "legitimate and neutral." *Turner v. Safely*, 482 U.S. 78, 90 (1987). For example, the opening and inspection of incoming mail helps prevent contraband from entering the facility. *See, e.g., Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993) (explaining that "though receipt of incoming mail implicates constitutional rights, prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security."). Limitations on bringing electronic devices to in-person visits are allowable, moreover, in light of the Supreme Court's recognition that in-person "visits invite a host of security problems." *Block v. Rutherford*, 468 U.S. 576, 586 (1984).

Plaintiff's requests for alternative procedures, such as the ability to exchange documents with alien detainees via email or fax, ECF. 118 at 40 ¶100, are not required under the PBNDS 2008. Such capabilities are not required because "alternative means of exercising the right . . . remain open" to alien detainees at Florence. *Turner*, 482 U.S. at 90. When considering a ban on the availability of bulk mail to inmates, the Supreme Court explained that "[s]ince other avenues of outside informational flow . . . remain available, the prohibition on bulk mailing, reasonable in the absence of First Amendment considerations, remains reasonable." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 131 (1977). Accordingly, the lack of fax and email capabilities does not constitute punishment because alternative methods of document sharing are available— attorneys may schedule in-person visits or send documents via mail.

Importantly, "a regulation which generally advances a legitimate governmental interest of sufficient importance is not invalid simply because the government does not demonstrate that each and every application of that regulation necessarily furthers that interest." *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986). Furthermore, because "the Due Process Clause does not mandate a 'lowest common denominator' security standard," *Bell v. Wolfish*, 441 U.S. 520, 554 (1979). ICE is not required to implement the same standards at all of its immigration facilities. Immigration detention facilities may be owned and operated by ICE, a state or local entity, or a private contractor, 8 U.S.C. § 1231(g), and the standards vary. As ICE notes in its Detention Center Fact Sheet, "each detention facility adheres to *one of several sets of* ICE national detention standards." ICE Detention Standards, Fact Sheet, Feb, 24, 2023, *available at* https://www.ice.gov/factsheets/facilities-pbnds (emphasis added). The availability of allegedly better or more convenient conditions at other immigration detention facilities does not turn the conditions at Florence into punishment. Because Defendants' policies serve the rational purpose of maintaining Florence in a safe and effective manner, they are not required to be the same as those in other detention facilities. Where, as here, there is no constitutional violation, the court must uphold the standards "rather than [the] court's idea of how to best operate a detention facility." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

Plaintiff's second amended complaint should be dismissed because Defendants' attorney access procedures are in compliance with the requirements of the PBNDS 2008 and do not create conditions that rise to the level of punishment.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be GRANTED.

Dated: September __, 2023              /s/ Gina M. D'Andrea

                                       Gina M. D'Andrea (DC Bar No. 1673459)
                                       Christopher J. Hajec (D.C. Bar No. 492551)
                                       Immigration Reform Law Institute
                                       25 Massachusetts Ave NW, Suite 335
                                       Washington, DC 20001
                                       202.232.5590
                                       gdandrea@irli.org

## **CERTIFICATE OF COMPLIANCE**

The foregoing brief complies with LCvR 7(o)(4) because it does not exceed 25 pages in length.

/s/ Gina M. D'Andrea