**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT,<br><br>                *Plaintiff*,<br><br>                v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>                *Defendants*. | No. 1:22-cv-03118 (CKK) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

I.     FIRRP's Detained Clients Face Urgent Challenges Requiring Adequate Legal
Representation.......................................................................................................... 2

II.    Defendants Are Responsible for Ensuring Attorney Access at Florence. ......................... 3

III.   Defendants Restrict Attorney-Client Communications at Florence. ................................. 4

      A.    Defendants Restrict Access to Reliable, Confidential In-Person Attorney-Client
Visits at Florence. ........................................................................................... 4

      B.    Defendants Restrict Reliable Access to Free, Confidential Telephone Calls. ........ 5

      C.    Defendants Restrict Sending and Receiving Legal Documents at Florence........... 6

      D.    Defendants Fail to Make Reasonable Accommodations for FIRRP's Detained
Clients with Disabilities at Florence. ................................................................ 6

IV.    Procedural History. ................................................................................................... 8

STANDARD OF REVIEW .................................................................................................... 9

ARGUMENT ...................................................................................................................... 10

I.     FIRRP Has Third-Party Standing. ............................................................................. 10

      A.    Plaintiff Adequately Alleges Injury in Fact........................................................ 11

      B.    Plaintiff Adequately Alleges that Detained Clients Are Hindered in Protecting
Their Rights. .................................................................................................. 15

II.    FIRRP States Valid Claims to Relief........................................................................... 18

      A.    FIRRP States a Valid Fifth Amendment Substantive Due Process Claim. .......... 18

           1.    FIRRP's Detailed Factual Allegations State a Plausible Fifth Amendment
Claim..................................................................................................... 18

           2.    FIRRP Has Stated a Valid Claim that Attorney Access Conditions at
Florence Are Punitive in Violation of the Fifth Amendment. .................. 21

      B.    FIRRP States a Valid Rehabilitation Act Claim. ................................................. 24

           1.    The Specific Allegations in FIRRP's Second Amended Complaint Put
Defendants on Notice of the Rehabilitation Act Claim. ........................... 26

           2.    Defendants' Arguments for Dismissal for Failure to State a Claim Raise,
at Most, Factual Disputes that Cannot Serve as a Basis to Dismiss
FIRRP's Rehabilitation Act Claim. ....................................................... 27

CONCLUSION.................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Choate,*
    469 U.S. 287 (1985)............................................................................28, 35

*Am. Council of the Blind v. Paulson,*
    525 F.3d 1256 (D.C. Cir. 2008) ...................................................25, 28, 29

Memorandum Opinion, *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.,*
    ECF No. 79, No. 22-cv-3118 (CKK) (D.D.C. Feb. 1, 2023)......................... *passim*

Order and Preliminary Injunction, *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.,*
    ECF No. 78, No. 22-cv-3118 (CKK) (D.D.C. Feb. 1, 2023).........................8, 9, 24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................10, 19, 20, 26

*Beard v. Banks,*
    548 U.S. 521 (2006)........................................................................23

*Bell v. Wolfish,*
    441 U.S. 520 (1979)........................................................................21

*Brown v. District of Columbia,*
    928 F.3d 1070 (D.C. Cir. 2019) ...........................................................25

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ...................................................10, 16, 18, 19

*Reid-Witt ex rel. C.W. v. District of Columbia,*
    486 F. Supp. 3d 1 (D.D.C. 2020) .........................................................29

*Covad Commc'ns Co. v. Revonet, Inc.,*
    250 F.R.D. 14 (D.D.C. 2008)..............................................................10

*Durrenberger v. Tex. Dep't of Crim. Just.,*
    757 F. Supp. 2d 640 (S.D. Tex. 2010) .................................................32

*Fraihat v. U.S. Immigr. & Customs Enf't,*
    16 F.4th 613 (9th Cir. 2021) ..............................................................34

*Franco-Gonzalez v. Holder,*
    No. 10-02211, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013) .........................24, 35

*Gray Panthers Project Fund v. Thompson,*
  273 F. Supp. 2d 32 (D.D.C. 2002) .........................................................................20

*Hand v. Perez,*
  No. 14-0880, 2015 WL 3534162 (D.D.C. June 5, 2015) ........................................13

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ................................................................................................12

*Jones v. Blanas,*
  393 F.3d 918 (9th Cir. 2004) ..................................................................................22

*Kingsley v. Hendrickson,*
  576 U.S. 389 (2015) ................................................................................................21

*Little v. Fenty,*
  689 F. Supp. 2d 163 (D.D.C. 2010) .........................................................................9

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................................................11

*Moghaddam v. Pompeo,*
  424 F. Supp. 3d 104 (D.D.C. 2020) ........................................................................10

*Nat'l Ass'n of the Deaf v. Trump,*
  486 F. Supp. 3d 45 (D.D.C. 2020) ..........................................................................28

*Nat'l Ass'n of Home Builders v. EPA,*
  667 F.3d 6 (D.D.C. 2011) ........................................................................................13

*Nat'l Postal Pro. Nurses v. U.S. Postal Serv.,*
  461 F. Supp. 2d 24 (D.D.C. 2006) ..........................................................................10

*Niece v. Fitzner,*
  922 F. Supp. 1208 (E.D. Mich. 1996) .....................................................................30

*NB ex rel. Peacock v. District of Columbia,*
  682 F.3d 77 (D.C. Cir. 2012) ..................................................................................11

*Phillips v. Mabus,*
  894 F. Supp. 2d 71 (D.D.C. 2012) ..........................................................................20

*Powers v. Ohio,*
  499 U.S. 400 (1991) ................................................................................................11

*R.I.L-R v. Johnson,*
  80 F. Supp. 3d 164 (D.D.C. 2015) ..........................................................................21

*Ramirez v. U.S. Immigr. & Customs Enf't*,
    310 F. Supp. 3d 7 (D.D.C. 2018) ........................................................................14

*Rogers v. Colo. Dep't of Corr.*,
    No. 16-02733, 2019 WL 4464036 (D. Colo. Sept. 18, 2019)...........................................28, 35

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec. (SPLC I)*,
    No. 18-760, 2020 WL 3265533 (D.D.C. June 17, 2020)................................................. *passim*

*Singleton v. Wulff*,
    428 U.S. 106 (1976)...........................................................................15

*Solomon v. Vilsack*,
    763 F.3d 1 (D.C. Cir. 2014)...............................................................25, 30, 31

*Torres v. U.S. Dep't of Homeland Sec.*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) ....................................................22, 25

*Turner v. Safley*,
    482 U.S. 78 (1987)............................................................................23

*United States v. TDC Mgmt. Corp.*,
    263 F. Supp. 3d 257 (D.D.C. 2017) ......................................................15, 17

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    485 F. Supp. 3d 1 (D.D.C. 2020) .................................................10, 12, 17, 18

*Young v. D.C. Hous. Auth.*,
    31 F. Supp. 3d 90 (D.D.C. 2014) ..........................................................20

**Rules**

Fed. R. Civ. P. 8(a) .............................................................................20

Fed. R. Civ. P. 12(b) .................................................................9, 10, 32, 34

**Other Authorities**

U.S. Const. Amend. V ........................................................................ *passim*

Wright & Miller, 6 Federal Practice and Procedure § 1483 (3d ed. 2010)...................................27

## **INTRODUCTION**

In this action, Plaintiff Florence Immigrant and Refugee Rights Project ("FIRRP") seeks to ensure that its immigrant clients held in civil detention may exercise their foundational right to retain and communicate with legal counsel. FIRRP is a non-profit organization that provides free legal services to detained immigrants. FIRRP challenges Defendants' restrictions on communication with and access to their detained immigrant clients at the Florence Correctional Center ("Florence" or "FCC") in Florence, Arizona, in violation of the Fifth Amendment and the Rehabilitation Act. Although this Court has already issued a preliminary injunction order in Plaintiff's favor, concluding that attorney access conditions at Florence violate the U.S. Constitution, Defendants, including the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"), have now moved to dismiss for lack of standing and failure to state a claim. This motion should be denied.

FIRRP has made factual allegations necessary to demonstrate third-party standing and survive a motion to dismiss. There is also no question that FIRRP has stated valid claims for relief. This Court has already concluded that "it appears quite likely [that] Florence has functionally stripped detainee-clients of access to their attorneys without due justification," Memorandum Opinion, *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, ECF No. 79, No. 22-cv-3118 (CKK) (D.D.C. Feb. 1, 2023) (slip op.) (the "PI Op"), at 43,[1] and reminded Defendants that they have been "holding Plaintiff FIRRP's clients in unconstitutional conditions of confinement." Order, ECF No. 97, at 3. Drawing all reasonable inferences in the Plaintiff's favor, FIRRP has adequately pled that Defendants' restrictions violate Detained Clients' Fifth Amendment right to

---

[1] All page numbers of documents filed in this case refer to ECF page numbers.

substantive due process and discriminate against Detained Clients with Disabilities in violation of the Rehabilitation Act.

Defendants' arguments also misunderstand the Federal Rules of Civil Procedure. Disregarding the well-pleaded allegations of the Second Amended Complaint, ECF No. 118 ("SAC"),[2] Defendants repeatedly argue for dismissal on the basis that Plaintiff did not attach declarations to its complaint. Such evidence is not required at the pleading stage. Because FIRRP has demonstrated third-party standing, and has stated valid claims for relief, this Court should deny Defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     FIRRP'S DETAINED CLIENTS FACE URGENT CHALLENGES REQUIRING ADEQUATE LEGAL REPRESENTATION.

FIRRP has represented or currently represents Detained Clients in proceedings seeking release from detention through bond or parole and/or challenging conditions of confinement. SAC ¶¶ 24-35 (listing individual clients), 36-44 (describing the types of proceedings). Given the procedural requirements, legal complexities, burdens of proof, and short timelines in these proceedings, FIRRP's legal representatives and Detained Clients require, and are entitled to, reliable means of timely and confidential communication. *Id.* ¶¶ 11-12, 23, 37-40, 44-45, 131-34. Yet, as this Court has already found, Defendants restrict FIRRP's ability to communicate reliably and confidentially with Detained Clients in the most basic ways. *Id.* ¶¶ 49-130; *see also* PI Op. at 32-34 (finding that Florence "has effectively blocked attorney-access *in toto*").

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Second Amended Complaint.

## II.    DEFENDANTS ARE RESPONSIBLE FOR ENSURING ATTORNEY ACCESS AT FLORENCE.

As the federal agencies and officials responsible for managing the immigration detention system, Defendants are responsible for ensuring that detained immigrants' access to counsel comports with constitutional and federal law requirements. SAC ¶¶ 18-19, 138. In light of this responsibility, Defendants have developed standards governing conditions in immigration detention (collectively, the "Detention Standards"), and Florence is governed by the 2008 Performance-Based National Detention Standards ("PBNDS"). *Id.* ¶¶ 4, 8, 139-40. These Detention Standards—which are not in line with, and in many respects fall short of, constitutional requirements—provide rules and requirements for conditions in immigration detention, including confidential attorney-client meetings, legal visitation, interpretation services, confidential attorney-client telephone conversations, direct or free calls to legal representatives, delivery of messages to detainees, duration of legal calls, and confidentiality of legal mail (collectively, "Attorney Access Provisions"). *Id.* ¶¶ 144-45. However, Defendants have consistently failed to enforce compliance with the Detention Standards. *Id.* ¶¶ 146-49. And while ICE conducts inspections at Florence,[3] the DHS Office of Inspector General ("DHS-OIG") has concluded that "neither the inspections nor the onsite monitoring ensure consistent compliance with detention standards, nor do they promote comprehensive deficiency corrections." *Id.* ¶ 146.[4] These failures extend to the Attorney Access Provisions. Just last year, ICE admitted to Congress that, despite

---

[3] DHS, ICE, Off. of Det. Oversight, *Follow-Up Compliance Inspection of the CCA Florence Correction Center* 5 (June 2022), https://bit.ly/3MTv29U.
[4] Citing DHS Off. of Inspector Gen., *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements* at DHS-OIG Highlights (June 26, 2018), https://bit.ly/2Mwp2Ug.

regular inspections of facilities, it "does not track . . . the number of facilities that do not meet ICE standards for attorney/client communications." *Id.* ¶ 9.

## III.   DEFENDANTS RESTRICT ATTORNEY-CLIENT COMMUNICATIONS AT FLORENCE.

### A.   Defendants Restrict Access to Reliable, Confidential In-Person Attorney-Client Visits at Florence.

*Lack of Private Spaces for In-Person Meetings*. As this Court has already found, Florence lacks sufficient private areas to conduct confidential in-person legal visits between Detained Clients and Plaintiff. *See* PI Op. at 28; SAC ¶¶ 49-51.[5] Legal visits at Florence occur primarily in a large, cafeteria-style visitation room with several tables spaced only a few feet apart and within earshot of guards, staff, other detained individuals, and other visitors. SAC ¶ 50. Florence has only two or three private attorney visitation rooms for approximately 400 people, and attorneys cannot share documents confidentially with clients in these private rooms. *Id.* ¶¶ 51, 67. These rooms are shared with persons detained by the U.S. Marshals Service and are typically not made available for private visitation unless the client is a security risk. *Id.* ¶ 51.

*Restricted Access to Interpreters*. Defendants also obstruct access to interpreters during in-person legal visits. *Id.* ¶ 58-70. Although interpreters are necessary when an attorney and client do not speak the same language, access to interpreters is effectively foreclosed during in-person attorney-client meetings at Florence, including in the limited private attorney visitation rooms. *Id.*

---

[5] Defendants recently attested to installing new "virtual visitation booths" in compliance with this Court's preliminary injunction order. *See* Notice of Compliance, ECF No. 120. But at the time the operative complaint was filed, those booths were not operational and, since installation, FIRRP staff have not been able to assess whether the booths ameliorate the unconstitutional conditions at Florence, nor do Defendants make any representations about whether these booths are currently functional.

¶¶ 58, 61-65. Given the lack of access to telephonic interpretation, attorneys must arrange for interpreters to travel in person to Florence, which presents its own set of difficulties. *Id.* ¶ 61.

*Failure to Provide Video Teleconference Access.* Defendants also have failed to provide free, confidential video teleconference access to Detained Clients at Florence, which, when combined with Defendants' failures to provide in-person and telephonic visitation discussed below, "effectively vitiates attorney-client access in its entirety." *See* PI Op. at 32.

### B.   Defendants Restrict Reliable Access to Free, Confidential Telephone Calls.

*Lack of Private, Confidential Phone Calls.* Defendants have failed to provide access to private spaces at Florence for Detained Clients to conduct legal phone calls with their attorneys. *Id.* ¶¶ 81-83. Telephone calls are made through telephones located in the open housing unit, and there is no private space for detained immigrants to communicate confidentially with counsel.[6] *Id.* ¶ 82. Florence staff has routinely denied requests for private space to conduct attorney-client telephone calls.

*Lack of Scheduling Procedures for Phone Calls.* FIRRP also faces significant barriers to scheduling phone calls with Detained Clients. FIRRP attorneys have been unable to reliably speak with Detained Clients at a designated time, leaving the ability to talk with Detained Clients largely to chance. *Id.* ¶¶ 71-80, 125. The inability to schedule phone calls also prevents the use of interpreters, who are necessary for communication with non-English speaking clients; many interpretation services, particularly for rarer languages, require advance notice to ensure availability. *Id.* ¶ 74. With the exception of Defendants' recent interim measures taken to comply with the Court's preliminary injunction order, *see id.* ¶ 76, there has been no way to schedule legal

---

[6] After requesting additional time to comply with the Court's preliminary injunction order, Defendants provided Detained Clients with a prepaid mobile phone for attorney-client communication. SAC ¶ 69. Calls made from these cellphones are not always confidential, at times being conducted in hallways or in the corner of the cafeteria-style room. *Id.* ¶ 76.

phone calls at all at Florence. *Id.* ¶ 72. Even despite these interim measures, scheduling confidential calls with Detained Clients remains a serious difficulty. *Id.* ¶¶ 76-77.

*Phone Calls Are Not Free*. Detained Clients must generally pay to call counsel on a monitored line, which limits attorney-client communication. *Id.* ¶¶ 85, 87. While the "pro bono platform" could theoretically allow Detained Clients to contact FIRRP, the pro bono platform is functionally impossible to use, forcing Detained Clients to use paid platforms. *Id.* ¶¶ 87-88.

### C.    Defendants Restrict Sending and Receiving Legal Documents at Florence.

Attorneys must be able to send documents for Detained Clients to review and sign, including declarations, forms, and other legal filings. *Id.* ¶¶ 95, 99. As this Court has already found, Defendants do not permit the use of widely available methods to timely exchange legal documents, such as fax and email. PI Op. at 33; *see also* SAC ¶ 96. FIRRP attorneys and Detained Clients must therefore rely on mail or courier delivery to exchange legal documents and obtain signatures, which can often take several days, because of both the U.S. postal system *and* Defendants' failures to timely deliver mail to Detained Clients once received at the facility. *Id.* ¶¶ 97-98. This is particularly problematic for the fast-paced proceedings and time-sensitive matters in which FIRRP represents Detained Clients. *Id.* ¶¶ 95, 98-99.

### D.    Defendants Fail to Make Reasonable Accommodations for FIRRP's Detained Clients with Disabilities at Florence.

FIRRP represents Detained Clients with Disabilities at Florence, including those who qualify for the National Qualified Representative Program ("NQRP"), a federal program that provides legal representation to detained immigrants found to be mentally incompetent. *Id.* ¶¶ 107, 119. These individuals include people who have been determined by a qualified mental health provider to have a serious mental disorder or condition. *Id.* ¶ 107. FIRRP's Detained Clients with Disabilities experience greater obstacles to attorney access than other Detained Clients because

they face unique barriers due to their disabilities and experience more significant challenges resulting from the attorney access restrictions detailed above. *Id.* ¶ 111. At Florence, there are distinct challenges with the message relay and call-back system for telephonic communication with Detained Clients with Disabilities. *Id.* ¶¶ 30, 32, 113-14, 125. A significant number of Detained Clients with Disabilities are placed into medical or mental health observation/segregation in conditions akin to solitary confinement, where telephone access is either sharply limited or non-existent, often resulting in a total loss of access to counsel for weeks. *Id.* ¶¶ 122-24. Florence lacks clearly established procedures to allow in-person access to counsel for individuals who are in medical/mental health observation or segregation. *Id.* ¶ 123. Defendants fail to consistently provide accommodations at Florence, despite FIRRP's requests. *Id.* ¶ 128.

For example, FIRRP encountered significant challenges communicating with its Detained Client, Jose, who was deemed mentally incompetent to represent himself in immigration court, and who has been diagnosed with Post-Traumatic Stress Disorder, Major Depressive Disorder with mood congruent psychotic features, and Unspecified Neurocognitive Disorder. *Id.* ¶¶ 29, 112. While detained at Florence, he exhibited behavior including lying naked in his cell and rolling balls of feces over the floor. *Id.* Jose faced numerous challenges communicating with FIRRP staff for legal services. For example, Florence denied FIRRP staff in-person visitation after they had traveled to the facility five times in approximately two months. *Id.* ¶¶ 30, 113. Telephone communication with Jose during the five-month period that he was held in mental health observation also failed: FIRRP staff were only able to talk with him through Florence's call-back message system three times despite numerous attempts. Although FIRRP staff requested accommodations to communicate with Jose, neither Defendants nor facility staff provided the necessary accommodations for legal communication. *Id.* ¶¶ 30, 114.

FIRRP has experienced similar challenges in communicating with other Detained Clients with Disabilities, including Pedro, whose psychiatric symptoms are so extreme that it has been difficult to conduct a formal evaluation necessary for a clear diagnosis. Pedro has experienced psychosis and suicidality and has been observed attempting to self-harm by creating a noose, throwing and smearing feces, and expressing bizarre delusions. *Id.* ¶¶ 31, 116. Pedro also faced immense challenges in communicating with FIRRP staff. In over five months, Florence permitted FIRRP to visit with Pedro in person at Florence only twice, despite at least 20 attempts by FIRRP. *Id.* ¶ 32. FIRRP staff visited with Pedro on four other occasions, all of which took place at another detention facility or by coincidence. *Id.* FIRRP has never been able to communicate with Pedro via Florence's phone messaging system, despite several attempts. Although FIRRP staff requested accommodations to communicate with Pedro, neither Defendants nor Florence facility staff provided the necessary accommodations for legal communication. *Id.*

## IV.   Procedural History.

Plaintiff filed the instant action on October 13, 2022, and filed a Second Amended Complaint on August 11, 2023. ECF Nos. 1, 118. On February 1, 2023, the Court entered an order and preliminary injunction against Defendants due to the constitutionally deficient attorney access conditions at Florence. Order and Preliminary Injunction, *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, ECF No. 78, No. 22-cv-3118 (CKK) (D.D.C. Feb. 1, 2023) ("PI Order"). The Court found that FIRRP had shown "a clear likelihood of success on its punitive-detention claim as to Florence" and that it had "effectively blocked attorney access *in toto*." PI Op. at 32, 34. The Court ordered Defendants to either install "six private, confidential attorney-client visitation rooms in which counsel may utilize translation services and physically pass documents to and from their detainee client" or "install[] or transfigure[] a ratio of twenty-five [detainees] to one [telephone] that block all others from listening to legal calls while in progress." PI Order at 1. The Court further

ordered that, in making these changes, Defendants "shall otherwise comply with every provision" of the applicable Detention Standards. *Id.*[7]

After seeking two extensions of the Court's deadline to comply with the preliminary injunction (*see* ECF Nos. 93, 100),[8] on August 30, 2023, Defendants represented that they had complied with the preliminary injunction order by installing "virtual visitation booths." *See* ECF No. 120-1 ¶ 7. FIRRP attorneys, however, have not determined that these measures provide, *inter alia*, constitutionally adequate privacy, confidentiality, or a means to communicate effectively with Detained Clients. Further, Defendants have made no assurances that these "virtual visitation booths" are actually in operation, or that use of these booths will continue should the preliminary injunction be dissolved.

## STANDARD OF REVIEW

Defendants seek to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(6). When considering the question of third-party standing, "[a] court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts." *Little v. Fenty*, 689 F. Supp. 2d 163, 167 (D.D.C. 2010).

---

[7] As Defendants state, this Court suggested that Florence abides by the 2019 National Detention Standards for Non-Dedicated Facilities, but "ICE confirms and Plaintiff agrees, however, that Florence adheres to the 2008 PBNDS." Defs.' MTD at 7 n.2.

[8] On April 11, 2023, following Defendants' first extension request, the Court issued an interim order instructing Defendants to "acquire and provide under reasonable circumstances a prepaid mobile phone to a FIRRP client upon request for the purposes of attorney-client communications[,]" and to "ensure that the call is made as confidentially as possible under the circumstances." Order, ECF No. 97, at 2, 3. The Court further reminded Defendants that "they are presently holding Plaintiff FIRRP's clients in unconstitutional conditions of confinement and are subject to a preliminary injunction mandating that they remedy these unconstitutional conditions of confinement." *Id.* at 3.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A plaintiff's complaint "does not require 'detailed factual allegations,'" but should be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation and internal quotation marks omitted). "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 112 (D.D.C. 2020) (quoting *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006)).

Although the court "is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record," *Covad Commc'ns Co. v. Revonet, Inc.*, 250 F.R.D. 14, 18 (D.D.C. 2008), there is no requirement in the Federal Rules of Civil Procedure that a plaintiff attach declarations to the complaint. A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court does not assess the truth of what is asserted nor "whether a plaintiff has any evidence to back up what is in the complaint." *Id.* (citation and internal quotation marks omitted).

## ARGUMENT

## I.     FIRRP HAS THIRD-PARTY STANDING.

FIRRP has sufficiently alleged facts necessary to bring claims on behalf of its Detained Clients on a third-party basis. Although a litigant "generally must assert his own legal rights and interests," "courts have recognized that there are circumstances in which it is 'necessary to grant a third party standing to assert the rights of another.'" *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 34 (D.D.C. 2020) (citations omitted). To establish

third-party standing, a plaintiff must demonstrate (1) "an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute," (2) "a close relation to the third party," and (3) "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citations omitted). To withstand a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff's burden to establish standing at the pleading stage "is not onerous." *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012) (citation and internal quotation marks omitted).

### A.    Plaintiff Adequately Alleges Injury in Fact.

Defendants ignore that this Court has already concluded that FIRRP suffers injury in fact sufficient to find third-party standing based on the organizational harms FIRRP has suffered due to Defendants' attorney access barriers. PI Op. at 13, 18. Instead, in arguing that Plaintiff fails to allege injury in fact, Defendants apply the incorrect standard and ignore the clear requirement that it is the *litigant* who must demonstrate a "'sufficiently concrete interest' in the outcome of the issue in dispute." *Powers*, 499 U.S. at 411 (citation omitted).[9] Therefore, when a plaintiff is an organization, the injury in fact element does not focus on the third party; rather, it involves the same inquiry as the injury element required for organizational standing: harm to the *organization*. *See* PI Op. at 18; *see also S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec. (SPLC I)*, No. 18-760, 2020 WL 3265533, at *1 (D.D.C. June 17, 2020) (finding injury in fact to legal aid organization

---

[9] In attempting to buttress their position, Defendants misconstrue a statement that the Court made previously regarding the potential difficulties in proving the *ultimate merits* of claims, rather than any issue with demonstrating injury in fact. The Court was not even discussing the injury in fact requirement. Rather, it was discussing the "close relationship" prong of standing for an organization that is no longer a plaintiff in this case. *Compare* PI Op. at 20 *with* Defendants' Motion to Dismiss, ECF No. 121-1 ("Defs.' MTD"), at 12 (arguing that third-party standing requires a demonstration of how Defendants' restrictions impact "specific legal proceedings as to specific clients").

where attorney access barriers at detention facilities "have forced [p]laintiff to divert resources and have thwarted its organizational mission"); *Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 35 (finding injury in fact where healthcare provider suffered "financial and operational harm"). A legal aid organization such as FIRRP suffers an injury when the defendants' actions thwart the organization's purpose or mission. *See SPLC I*, 2020 WL 3265533, at *12 (citing cases); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding "there can be no question that the organization has suffered injury in fact" where defendant impairs an organization's ability to provide services and drains its resources). Plaintiff satisfies this standard, and Defendants do not argue otherwise.

Plaintiff's mission includes "providing free legal and social services to thousands of people detained in immigration custody at Florence as well as other ICE facilities in Arizona." SAC ¶ 17. Defendants' attorney access restrictions thwart that mission by inhibiting Plaintiff's daily operations and restricting it from providing effective legal representation to Detained Clients, which is thoroughly documented in the Second Amended Complaint. *See id.* ¶¶ 44, 131-35. For example, Plaintiff experiences difficulties in gathering sensitive information and evidence necessary to adequately prepare Detained Clients' cases due to the lack of confidential communication options. *See id.* ¶¶ 132-33. And restrictions on scheduling phone calls prevent Plaintiff from promptly speaking to Detained Clients at a time when both parties are available, leading to inefficiencies and delays in communication. *Id.* ¶¶ 92-93, 134, 137. These allegations show that Defendants' actions have harmed Plaintiff's organizational interests. *See* PI Op. at 15, 43 (ordering relief at Florence).

In addition, Plaintiff alleges that it must divert additional resources to combat the harm caused by Defendants. *See* SAC ¶¶ 136-37. As this Court has explained in this case, "where

government action makes it more difficult for an attorney to communicate with a potential client, the attorney must expend more resources (financial, logistical, etc.) to reach that potential client." PI Op. at 15 (citation omitted); *see also SPLC I*, 2020 WL 3265533, at *13 (holding that plaintiff organization suffered injury in fact where it needed to expend additional time to access detained clients, thereby "divert[ing] resources from [p]laintiff's primary mission"). FIRRP has been forced to spend more resources, both in time and money, to communicate with Detained Clients. For instance, due to Defendants' restrictions on telephone access and electronic document exchange, Plaintiff must incur expenses and spend extra time traveling to and from and waiting at Florence, even for simple or brief matters that otherwise could be addressed remotely. SAC ¶¶ 136-37. In sum, Plaintiff shows that the harm caused by Defendants results in a "consequent drain on the organization's resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.D.C. 2011) (alterations in original) (citation and internal quotation marks omitted). Plaintiff therefore demonstrates that it suffers injury in fact, the first requirement for third-party standing.

Defendants' arguments that Plaintiff has not demonstrated injury in fact all focus on allegations of harm to detainees and are therefore unavailing. But they are flawed for other reasons as well.

*First*, Defendants are wrong that Plaintiff "fails to identify a specific proceeding in which a detained client has been injured." Defs.' MTD at 12.[10] The Second Amended Complaint lays out

---

[10] Defendants cite *Hand v. Perez*, No. 14-0880, 2015 WL 3534162, at *7 (D.D.C. June 5, 2015), in support of this argument. In *Hand*, however, the court held that plaintiff lacked third-party standing because it failed to meet the close relationship and hindrance requirements. *Id.* at *6-7. Notably, the court assumed *arguendo* for purposes of the third-party standing analysis that "the plaintiff's allegations of monetary and reputational injury [to herself] satisfy the first requirement and show she has a concrete interest in the outcome of this lawsuit." *Id.* at *6. Defendants' reliance on *Hand* is thus misplaced.

myriad ways in which Defendants' attorney access restrictions injure specific Detained Clients, including as to proceedings against them. *See, e.g.*, SAC ¶ 76 (client's "inability to communicate openly and collect necessary documents delayed his bond hearing, as he could not collect necessary documents in time, and his attorney had to ask for a continuance"); *id.* ¶ 98 (Plaintiff "has represented several clients at Florence who have missed critical filing deadlines or have had to ask for continuances in bond proceedings because of excessive delays in mail leaving the facility, leading to unnecessary and prolonged detention."); *see also id.* ¶¶ 24-35, 52-55, 57, 65, 73, 76, 82, 88, 112-18, 133 (describing how Defendants' actions and omissions harm the ability of specific Detained Clients and FIRRP attorneys to have meaningful, confidential attorney-client communication).[11]

*Second*, Defendants' argument that the lawfulness of Detained Clients' custody negates any harm resulting from needlessly prolonged detention is baseless. *See Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 31 (D.D.C. 2018) (irreparable injury shown from "each additional day" of "purportedly inappropriate detention"). This argument also overlooks that FIRRP has already shown irreparable harm to its Detained Clients to warrant entry of a preliminary injunction at Florence. *See* PI Op. at 40.

*Third*, and finally, with respect to missed deadlines, Defendants' contention that Plaintiff does not allege "why an attorney could not visit the client in-person to sign the documents" ignores the allegations. Defs.' MTD at 14. FIRRP incurs extra expenses and travel time traveling to and

---

[11] Plaintiff also disputes any suggestion that Detained Clients suffer only two forms of injury: (1) prolonged or unnecessary detention; and (2) missed deadlines. The Second Amended Complaint contains numerous allegations regarding Detained Clients' injury resulting from Defendants' attorney access barriers at Florence, including Detained Clients' fear for their safety in custody resulting from the lack of confidential attorney-client communication. *See, e.g.*, SAC ¶¶ 25, 52, 76 (alleging that "Detained Clients, such as Benjamin, fear for their safety when these calls are not held in a confidential location").

from and waiting at Florence for an otherwise simple matter that could normally be addressed remotely, which detracts from FIRRP's ability to effectively represent Detained Clients. *See* SAC ¶¶ 136-37.

In any event, Plaintiff's allegations are more than sufficient to allege injury in fact in light of the liberal pleading requirement under the Federal Rules and given that the key inquiry is whether Plaintiff, as an organization, has itself suffered harm on account of Defendants' attorney access barriers.

### B.    Plaintiff Adequately Alleges that Detained Clients Are Hindered in Protecting Their Rights.

Defendants are incorrect that Plaintiff fails to adequately allege hindrance. The hindrance prong "does not require an absolute bar from suit, but some hindrance to the third party's ability to protect his or her own interests." *SPLC I*, 2020 WL 3265533, at *14 (citation and internal quotation marks omitted). As Defendants acknowledge, the hindrance prong is a "relatively low threshold." Defs.' MTD at 15 (citation omitted). Courts have recognized the following as hindrances justifying third-party standing: "systemic practical challenges to pursuing one's own rights," "deterrence from filing suit due to privacy concerns," or "the 'imminent mootness' of a case." *United States v. TDC Mgmt. Corp.*, 263 F. Supp. 3d 257, 274 (D.D.C. 2017) (citing *Singleton v. Wulff*, 428 U.S. 106, 117 (1976)). Each one of these hindrances is present here, and Defendants' arguments to the contrary are unpersuasive.

Detained Clients face systemic practical challenges in bringing lawsuits as first-party litigants due to Defendants' restrictions on access to counsel. *See* SAC ¶ 46 (alleging that "the attorney access issues discussed here," in addition to other "significant barriers," "hinder[] [Detained Clients] from protecting their own interests as first parties in this case"). For Detained Clients to bring their own lawsuits, they would need to have adequate attorney access to allow the

attorney to, for example, assess legal claims, engage in fact-gathering, provide advice, obtain signatures on release forms, and prepare testimony. SAC ¶ 131.[12] But attorney access barriers at Florence make this essentially impossible. *Id.*[13]

Defendants also err in arguing that FIRRP's Detained Clients are not hindered in bringing *this* suit because they have brought *other* suits challenging conditions of confinement in the past, including those related to COVID-19 issues. Defs.' MTD at 15-16. This argument is flawed for two reasons.

*First*, Plaintiff alleges that attorney access barriers at Florence, including an inability to schedule phone calls with Detained Clients, resulted in FIRRP's inability to represent Detained Clients at Florence in a COVID-19 conditions lawsuit, in marked contrast to its ability to do so at two other nearby detention facilities where scheduled phone calls could be made. *See* SAC ¶ 44. Defendants' attempt to undermine this allegation by pointing to other instances where FIRRP has sometimes "scheduled calls with detained clients using Florence's call-back message system" is unavailing. Defs.' MTD at 16 n.5. Defendants ignore the significant difficulties that Detained Clients face in using that system.[14]

---

[12] Defendants implicitly acknowledge that access to counsel is needed for Detained Clients to assert their rights as first-party litigants. *See* Defs.' MTD at 15 ("Plaintiff still must establish some hindrance to its clients' ability to advance their own claims (*of course, with the assistance of counsel*).") (emphasis added).

[13] Defendants' contention that detainees have access to counsel because "Plaintiff may visit detainees in person at Florence pursuant to the normal visiting procedures and also may use VTC for additional visitation" is baseless. Defs.' MTD at 17. Defendants ignore the many allegations of the inadequacy of such procedures. *See, e.g.*, SAC ¶¶ 49–67. Although Defendants recently installed virtual visitation booths in response to the Court's preliminary injunction order, it remains to be seen whether VTC will, in fact, be functional and confidential. To the extent there remain disputed facts relevant to both Plaintiff's standing and the merits of Plaintiff's claims, the Court should defer its decision on standing until the merits are heard. *See Browning*, 292 F.3d at 242.

[14] *See, e.g.*, SAC ¶¶ 30 ("During a five-month period in mental health observation, FIRRP staff were only able to communicate with Jose through Florence's call-back message system three times

FIRRP's continued representation of Detained Clients at Florence and the mere fact that it has been able to schedule some phone calls in limited circumstances with certain Detained Clients despite great difficulty does not undermine FIRRP's ability to meet the low threshold in showing hindrance to its Detained Clients' ability to advance their own claims.

*Second*, even if FIRRP represents Detained Clients in other conditions of confinement proceedings, this does not prevent FIRRP from showing that Detained Clients are hindered in bringing *this* lawsuit. *See Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 36 (rejecting defendants' argument that plaintiffs could not meet the "hindrance" element where LGBTQ patients themselves sued as plaintiffs in another jurisdiction).

Even if it were feasible for Detained Clients to bring their own suit, such a suit would take up the already limited time Detained Clients have to communicate with counsel regarding their immigration and other proceedings. Therefore, the attorney access barriers at issue in this lawsuit present systemic practical challenges that hinder Detained Clients' ability to bring this lawsuit as named parties. *See TDC Mgmt. Corp.*, 263 F. Supp. 3d at 274. These challenges are exacerbated by Detained Clients' lack of English proficiency, a limited understanding of the U.S. legal system, and little access to legal resources. SAC ¶ 46; *see also SPLC I*, 2020 WL 3265533, at *14 (finding these same obstacles contributed to the requisite hindrance).

Plaintiff also alleges that privacy concerns further hinder Detained Clients' ability to advance their own claims. In particular, fear of retaliation deters Detained Clients from bringing

---

despite numerous attempts."), 73 (describing the failures of the message relay system that "has hampered attorney access at Florence"), 114 (noting "one of the few successful calls" that FIRRP was able to have with Jose), 125 ("At Florence, the exclusive reliance on a message relay and call-back system for telephonic communication with clients poses distinct barriers to communicating effectively with Detained Clients with Disabilities, who are especially unable to navigate the call-back system effectively due to their symptoms or conditions.").

suit. SAC ¶ 46; *see also Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 36 (concluding that patients' fear of stigmatization is a powerful deterrent to bringing a lawsuit and satisfies the hindrance element). Plaintiff alleges that "Detained Clients often fear discussing the details of their confinement with counsel due to fear of retaliation," particularly where they are unable to conduct confidential phone calls. SAC ¶ 46; *see also id.* ¶ 44. Contrary to Defendants' argument, there is nothing speculative about that allegation.

Lastly, Plaintiff alleges facts sufficient to find that imminent mootness is a key concern that hinders Detained Clients' ability to advance their claims as first-party litigants. For instance, if Detained Clients were to bring claims as first-party litigants, those claims would be subject to imminent mootness, as "many Detained Clients do not remain at Florence long enough to remain a plaintiff for the duration of a lawsuit" and their release or deportation before adjudication of their claims would result in those claims becoming moot. SAC ¶ 46; *see also SPLC I*, 2020 WL 3265533, at *14. Defendants do not dispute this allegation, and instead merely argue that Plaintiff does not offer declarations from an identified client in support. Yet no declaration is required, as the facts as alleged are sufficient at this stage. *See Browning*, 292 F.3d at 242.

For these reasons, Plaintiff establishes the injury in fact and hindrance prongs of third-party standing.

## II.      FIRRP STATES VALID CLAIMS TO RELIEF.

### A.      FIRRP States a Valid Fifth Amendment Substantive Due Process Claim.

#### 1.      FIRRP's Detailed Factual Allegations State a Plausible Fifth Amendment Claim.

Plaintiff FIRRP has stated a valid claim, with more than sufficient specificity, that Defendants' restrictions on access to counsel at Florence violate Detained Clients' Fifth

Amendment right to substantive due process.[15] Under a more rigorous preliminary injunction standard, this Court has already concluded that "FIRRP has shown a clear likelihood of success on its punitive-detention claim as to Florence." PI Op. at 32. As the Court has found, Defendants have "functionally stripped detainee-clients of access to their attorneys without due justification," and this failure to provide confidential legal visitation and confidential legal calls "effectively vitiates attorney-client access in its entirety." *Id.* at 32, 43.

FIRRP's Second Amended Complaint "state[s] a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, and FIRRP's detailed factual allegations, accepted as true, are more than sufficient to raise a plausible inference that would allow this Court to conclude that attorney access barriers at Florence violate the Fifth Amendment. In the Second Amended Complaint, FIRRP describes restrictions on detainee communication at Florence where "alternative and less harsh methods" are available that equally serve the institution's legitimate interests—this establishes a constitutional violation. PI Op. at 24 (quoting *SPLC I*, 2020 WL 3265533, at *30).

For example, FIRRP alleges that there are no "private, confidential attorney-client visitation rooms where counsel can utilize interpretation services and physically pass documents to and from detained clients." SAC ¶ 48; *see also id.* ¶ 51 (attorneys cannot share legal documents in private visitation rooms due to plexiglass walls); *id.* ¶ 67 ("If attorneys elect to use the private meeting rooms at Florence, they cannot exchange documents or procure signatures without giving them to a guard, breaching confidentiality."). FIRRP also alleges that the only visitation area where attorneys can share documents is in a cafeteria-like setting, where there is no privacy. *Id.* ¶¶ 50-51 ("Legal visits at Florence occur primarily in a large, cafeteria-style visitation room, which does

---

[15] Defendants also argue for dismissal on the basis that Plaintiff did not attach declarations to its complaint. Such evidence is not required at the pleading stage. *See Browning*, 292 F.3d at 242.

not provide any confidential space for attorneys and clients to communicate."). Likewise, FIRRP alleges that there is no VTC availability for attorney-client communication, *id.* ¶ 103, and legal calls made from housing units are not private or confidential. *Id.* ¶ 82. After two requests to extend time to comply with the Court's preliminary injunction order, Defendants provided Detained Clients with a prepaid mobile phone for attorney-client communication. *Id.* ¶ 69. These cellphone calls, however, are not always confidential, and are often held in a hallway or in the cafeteria-style visitation room, where Detained Clients can be overheard by others.[16] *Id.* ¶ 76. The factual allegations in the Second Amended Complaint plausibly state a Fifth Amendment punitive detention claim, in the same terms as those described in the preliminary injunction order. PI Op. at 32.

Defendants, however, urge dismissal, arguing that FIRRP's factual allegations of attorney-access barriers at Florence are "conclusory and do not reference a specific claim," and fail to satisfy Rule 8(a)(2) and *Iqbal*, leaving Defendants incapable of "formulat[ing] an informed defense." Defs.' MTD at 18. But Defendants' argument makes little sense. It is clear from the face of the Second Amended Complaint that FIRRP has raised a claim that the attorney access conditions violate Detained Clients' Fifth Amendment rights. *See* SAC ¶¶ 7, 161-66. Defendants point to individual factual allegations that taken alone, they argue, do not violate the U.S. Constitution. Defs.' MTD at 18-20 (citing lack of scheduled phone calls, burdensome pro bono call system, use

---

[16] Although Defendants now state that they have complied with the Court's preliminary injunction order by installing virtual visitation booths at Florence, ECF No. 120, this does not moot Plaintiff's claims. *Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 96 (D.D.C. 2014) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.") (citation omitted). Moreover, it is not clear that, absent this Court's preliminary injunction order, Defendants' wrongful behavior could not be reasonably expected to recur—for example, by closure or non-operation of the new booths. *Phillips v. Mabus*, 894 F. Supp. 2d 71, 84-85 (D.D.C. 2012); *Gray Panthers Project Fund v. Thompson*, 273 F. Supp. 2d 32, 34-35 (D.D.C. 2002).

of cellphones and printers, and lack of fax and email to exchange documents). But, as this Court has noted in the context of barriers to attorney-client communication in detention, a single restriction in isolation need not reach the level of a constitutional violation. Instead, analysis of attorney access restrictions should be based on the "totality of these circumstances." PI Op. at 29 (quoting *SPLC I*, 2020 WL 3265533, at *24). Under the totality of the circumstances, the detailed factual allegations in FIRRP's Second Amended Complaint state a plausible Fifth Amendment claim, and Defendants' motion should be denied.

2.   <u>FIRRP Has Stated a Valid Claim that Attorney Access Conditions at Florence Are Punitive in Violation of the Fifth Amendment.</u>

FIRRP has stated a valid claim that Defendants' restrictions on access to counsel impermissibly punish Detained Clients in violation of their Fifth Amendment right to substantive due process. Immigration detention is "undisputedly civil—*i.e.,* non-punitive in nature." *SPLC I*, 2020 WL 3265533, at *18 (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 187 (D.D.C. 2015)). Detained immigrants can establish unconstitutional punishment by showing that there is "an expressed intent to punish," or that the challenged conditions are either "not 'rationally related to a legitimate nonpunitive governmental purpose'" or "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)); *see also SPLC I*, 2020 WL 3265533, at *18. To determine whether a challenged condition is not rationally related to a legitimate governmental purpose, the court considers "whether the conditions are 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" *SPLC I*, 2020 WL 3265533, at *18 (quoting *Bell*, 441 U.S. at 539 n.20); *see also* PI Op. at 23.

Where conditions at a detention facility are "not more considerate than those at pretrial and prison facilities," they "may be punitive in nature." *SPLC I*, 2020 WL 3265533, at *19 (quoting

*Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1064-65 (C.D. Cal. 2019)); *cf.* PI Op. at 25 (stating that detained immigrants establish a "'presumption' of punitive detention" where conditions are "equal to or worse than conditions experienced by inmates convicted of a criminal offense") (citing *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)).[17] Upon establishing such a presumption, "a makeshift burden then generally shifts to the defendant to establish that the conditions are rationally related to a non-punitive purpose and those conditions were not excessive." PI Op. at 25 (citation omitted).

FIRRP has adequately pled that attorney access conditions at Florence are more restrictive than those in which prisoners serving criminal sentences are held, including those held at the very same facility. For example, attorneys of prisoners serving criminal sentences at the neighboring Central Arizona Correctional Facility ("CACF"), also located in Florence, Arizona, can schedule legal phone calls with their incarcerated clients, unlike ICE detainees at Florence. SAC ¶¶ 34, 78. Prisoners at CACF and other prisons in which Detained Clients have served their criminal sentences can meet with attorneys in private visitation rooms, *id.* ¶¶ 55, 57, or take confidential legal calls, *id.* ¶ 78, unlike ICE detainees at Florence. Prisoners at CACF have access to scheduled, confidential legal VTC calls, unlike ICE detainees at Florence. *Id.* ¶ 104.

As described in FIRRP's Second Amended Complaint, attorney access conditions at Florence are also worse than those widely available to prisoners serving criminal sentences. For example, state prisons nationwide are required to provide scheduled, confidential legal calls to people serving criminal sentences. *Id.* ¶ 78. State prisons nationwide are also required to provide

---

[17] In *Jones*, the Ninth Circuit compared civil detainees with criminal pre-trial detainees and concluded that conditions are presumptively punitive where conditions of civil confinement are "identical to, similar to, or more restrictive than, those in which [a detainee's] criminal counterparts are held." 393 F.3d at 932. This presumption is rebuttable upon demonstration of "legitimate non punitive interests" or that the restrictions are not "excessive." *Id.* at 935.

scheduled, confidential VTC calls to people serving criminal sentences, *id.* ¶ 104, and provide for the exchange of legal documents through fax and email. *Id.* ¶ 100. These attorney access policies—many of which include provisions for facility screening, preclearance, and advance notice—demonstrate that even in prisons, where penological interests are at their peak, attorney access can be provided through "many alternative and less harsh methods," while ensuring order and security. *SPLC I*, 2020 WL 3265533, at \*18 (citation and internal quotation marks omitted).

Numerous ICE detention centers have also successfully employed other alternative and less harsh methods to ensure access to counsel than those at Florence. For example, thirty-seven other ICE detention facilities nationwide provide scheduled calls and allow cellphones in legal visits. SAC ¶¶ 66, 79. Defendants have also installed private phone booths, ensured the availability of free and private legal phone calls, extended or eliminated automatic cut-offs for phone calls, and made fax machines and email available for legal correspondence at many ICE facilities. *Id.* ¶¶ 84, 91, 100.

Even under the more stringent test identified in *Turner v. Safley,* where a *prisoner* "can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may count that as evidence that the regulation does not satisfy the reasonable relationship standard." 482 U.S. 78, 91 (1987). Defendants have done little more than claim a *general* interest in facility order and security at Florence, but even *Turner* requires that *prison* (not detention) authorities "show more than a formalistic logical connection between a regulation and a penological objective." *Beard v. Banks*, 548 U.S. 521, 535 (2006). Defendants have not done so here.[18] Defendants' argument that the "continued immigration detention of

---

[18] Indeed, Defendants themselves note that "Plaintiff's requests can all be achieved by alternate means, such as conducting in-person visits or VTC meetings using the twenty-four (24) virtual

Plaintiff's clients pending removal cannot be described as punitive or excessive in relation to the legitimate government purpose of enforcing the immigration laws" misses the point. Defs.' MTD at 24. FIRRP does not challenge the fact of their clients' detention in the instant case, but rather seeks the end of punitive attorney access restrictions at Florence. For these reasons, Plaintiff states a valid substantive due process claim.

### B.   FIRRP States a Valid Rehabilitation Act Claim.

Defendants next seek to dismiss FIRRP's claim under the Rehabilitation Act. FIRRP brings this claim because its Detained Clients with Disabilities (a term defined in the SAC ¶¶ 107-09) face particular barriers to attorney access. This is "because Defendants impose certain barriers disproportionately on Detained Clients with Disabilities and because other barriers that apply both to Detained Clients with Disabilities and other Detained Clients have a disproportionate effect on Detained Clients with Disabilities." SAC ¶ 120.

Under *Franco-Gonzalez v. Holder*, the Rehabilitation Act requires the government to provide detained immigrants, whose "ability to meaningfully participate in the immigration court process" is "hindered by their mental incompetency," with an attorney or other qualified representative to assist them in immigration court under the Rehabilitation Act. No. 10-02211, 2013 WL 3674492, at *5, *9 (C.D. Cal. Apr. 23, 2013). FIRRP's Rehabilitation Act claim is a straightforward corollary to the same right to legal representation already recognized in *Franco-*

---

visitation booths available at Florence." Defs.' MTD at 24. Notably, Defendants installed these VTC booths only upon order by this Court, ECF No. 78, and had not yet installed them at the time of the Second Amended Complaint, after receiving two extensions. SAC ¶¶ 56, 69. Nor have Defendants attested that these booths are in operation at Florence. And, as noted *supra*, FIRRP staff have not been able to assess whether the booths ameliorate the unconstitutional conditions at Florence. However, the Defendants' installation of these VTC booths underscore Plaintiff's point: attorney access sought by Plaintiff is available by "alternative and less harsh methods" while ensuring order and safety, even where the government initially resists their implementation. *SPLC I*, 2020 WL 3265533, at *18.

*Gonzalez*: just as the government must provide a representative to people who require one to communicate their cases to the immigration court, it must also provide accommodations necessary for them to communicate with their legal representatives.

To succeed on its third-party Rehabilitation Act claim, FIRRP must show that "(1) one or more of its [Detained Clients with Disabilities] are 'disabled' within the meaning of the Rehabilitation Act; (2) one or more of [Detained Clients with Disabilities] are 'otherwise qualified' for a particular program or activity; (3) one or more of its [Detained Clients with Disabilities] were 'excluded from[] or denied the benefit of' that program or activity; and (4) 'the program or activity is carried out by a federal executive agency or with federal funds.'" PI Op. at 39 (citing *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008)). This inquiry is necessarily fact intensive. *See Solomon v. Vilsack*, 763 F.3d 1, 10 (D.C. Cir. 2014); *Brown v. District of Columbia*, 928 F.3d 1070, 1090 (D.C. Cir. 2019) (Wilkins, J., concurring).

At the preliminary injunction stage, this Court determined that it did not need to reach Plaintiff FIRRP's Rehabilitation Act claim. Turning to the claim of then-Plaintiff Americans for Immigrant Justice ("AIJ"), this Court distinguished AIJ's showing, which did not contain "a declaration from any client or doctor describing a particular client's purported disability," from *SPLC* and *Torres*, where the plaintiffs presented "declarations from individual clients" and included claims brought by detained immigrants themselves. PI Op. at 39. This Court indicated that it would have required specific factual evidence of "the specific identity of any clients' disabilities, how disabling their respective conditions are, the details of prior requests for accommodation(s), and the efforts (if any) by [the facility] to provide any such requested accommodation(s)" in order to evaluate AIJ's Rehabilitation Act claim at the preliminary injunction stage. *Id.* The Second Amended Complaint alleges the facts that the Court indicated it

would have evaluated at the preliminary injunction stage, adding specific factual allegations for two of Plaintiff's clients detained at Florence: "Jose" and "Pedro." SAC ¶¶ 107-18. This amended Rehabilitation Act claim readily satisfies the pleading standards.

Defendants seek to dismiss FIRRP's Rehabilitation Act claim on two legal bases: (1) it provides inadequate notice, and, (2) even drawing all factual inferences in its favor, FIRRP cannot satisfy the third prong of the relevant test: that "one or more of its [two] purportedly disabled clients were 'excluded from or denied the benefit of' th[e] program or activity." PI Op. at 39; *see also* Defs.' MTD at 24-25.

        1.     The Specific Allegations in FIRRP's Second Amended Complaint Put Defendants on Notice of the Rehabilitation Act Claim.

Defendants first argue that FIRRP's Second Amended Complaint did not put them on notice of its claims. Defs.' MTD at 24. Notice "does not require detailed factual allegations," but requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

Defendants contend that the Second Amended Complaint "fails to provide sufficient information about specific individuals' diagnoses and mental disabilities, or the specific accommodations requested, the specific accommodations that were denied, and the basis for any denial." Defs.' MTD at 24. This contention is false. The Second Amended Complaint alleges facts about specific individuals' diagnoses and mental disabilities. *See, e.g.*, SAC ¶ 112 (explaining Jose's diagnoses of "Post-Traumatic Stress Disorder, Insomnia Disorder, Major Depressive Disorder with mood congruent psychotic features, and Unspecified Major Neurocognitive Disorder, [are] most likely due to Traumatic Brain Injury"), 116 (explaining that "Pedro's symptoms are so extreme that it was difficult to conduct a formal evaluation and obtain a clear diagnosis," but that "he experienced psychosis and suicidality"). It similarly contains detailed

allegations of the "accommodation requests" that FIRRP has made. *See, e.g.*, *id.* ¶¶ 114, 118. The Second Amended Complaint also details that the specific accommodations were denied. *Id.* ¶¶ 114, 118. It also alleges that there appears to be no logically sound basis for these denials, which is based on Defendants' representations. *See, e.g.*, *id.* ¶ 110 (explaining that Defendant ICE established a directive requiring the type of attorney access for clients with disabilities that this case seeks), 114 (explaining that facility staff denied a request for private, scheduled legal phone calls "despite interest in such a system by those charged with telephonic visitation scheduling at Florence," and that facility staff "denied or attempted to deny" visits even when they were specifically approved by ICE beforehand).

The Court should deny Defendants' request to dismiss FIRRP's Rehabilitation Act claim for lack of notice.[19]

2.   Defendants' Arguments for Dismissal for Failure to State a Claim Raise, at Most, Factual Disputes that Cannot Serve as a Basis to Dismiss FIRRP's Rehabilitation Act Claim.

Defendants next argue on three bases that, even drawing all factual inferences in FIRRP's favor, FIRRP cannot satisfy the third prong of the relevant test: that "one or more of its [two] purportedly disabled clients were 'excluded from or denied the benefit of' th[e] program or activity." PI Op. at 39 (alterations omitted). Specifically, Defendants dispute that: (1) Plaintiff alleges a lack of meaningful access, (2) the accommodations requested are reasonable and have not been addressed, and (3) Defendants' discrimination against FIRRP's Detained Clients with Disabilities is solely on the basis of their disability. Each of these disputes is heavily factual, and Defendants fail to provide any basis for the Court to dismiss the case at the pleading stage.

---

[19] In the alternative, FIRRP respectfully requests that the Court grant leave to amend to correct whatever defect it may find. *See* Wright & Miller, 6 Federal Practice and Procedure § 1483 (3d ed. 2010) ("Ideally, if it is at all possible that the party against whom a dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.").

          *i.*    *FIRRP Alleges a Lack of Meaningful Access to Counsel.*

Defendants first argue that FIRRP's Second Amended Complaint falls short when it alleges a widespread—but not total—lack of attorney access for Detained Clients with Disabilities at Florence. Defs.' MTD at 25 ("Plaintiff does not allege that there is a ban on access . . . ."). This argument fails, particularly at the pleading stage.

The Supreme Court has established that the Rehabilitation Act requires government entities to provide "meaningful access" to people with disabilities. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Courts regularly find that the government has fallen short of providing "meaningful access" even when people with disabilities have ***some*** ways of accessing the benefit. *E.g.*, *Am. Council of the Blind*, 525 F.3d at 1259, 1269-70 (finding blind people lacked "meaningful access" to currency despite the government's argument that "availability of portable currency readers to identify denominations and credit cards as an alternative to cash" provided some access); *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 58 (D.D.C. 2020) (finding "[c]losed captioning and transcripts" of coronavirus briefings did not amount to "meaningful access" to these briefings for deaf people even though they provided some access); *Rogers v. Colo. Dep't of Corr.*, No. 16-02733, 2019 WL 4464036, at *16 (D. Colo. Sept. 18, 2019) (holding "the fact that TTYs retain some functionality" that provides deaf incarcerated people some ability to communicate "does not equate to meaningful access").

Defendants argue that FIRRP alleges ***some*** access to its Detained Clients with Disabilities and thus cannot bring this Rehabilitation Act claim. Defs.' MTD at 25. This argument, particularly at the pleading stage, is unavailing. FIRRP's Second Amended Complaint plainly alleges that the barriers to accessing counsel at Florence are high. For example, "at least five times over approximately two months, FCC denied FIRRP staff in-person visitation [with its client Jose] after they had already traveled to the facility." SAC ¶ 113. Similarly, fourteen of FIRRP staff's twenty

attempts to visit Pedro in person "were denied by staff." *Id.* ¶ 117.[20] Telephone contact has also been extremely difficult. For example, over a "five-month period" when Jose was in mental health observation, FIRRP staff succeeded in contacting him by phone only three times. *Id.* ¶ 113. In addition, "FIRRP was never able to communicate with Pedro [by phone] despite several attempts." *Id.* ¶ 117. In another recent case, a FIRRP attorney "was denied telephone and in-person visits for nearly a month with a Detained Client with a [D]isability, who was under 'mental health watch,' during which time the client's case continued before the court." *Id.* ¶ 123. Plaintiff alleges that these access barriers can have serious repercussions, such as by causing "[i]nterruption[s] in communications [that] undermine the attorney-client relationship," and "concrete harm" to the ability of Plaintiff and Detained Clients with Disabilities "to communicate effectively about matters crucial to legal representation." *Id.* ¶¶ 121, 129.

Moreover, "meaningful access" is a "necessarily fact-specific" inquiry. *Am. Council of the Blind*, 525 F.3d at 1267; *see also Reid-Witt ex rel. C.W. v. District of Columbia*, 486 F. Supp. 3d 1, 12 (D.D.C. 2020) ("[T]he Court cannot make a factual determination [about the meaningful-access inquiry] on a motion to dismiss."). Plaintiff will provide fact evidence further substantiating these significant barriers as well as expert evidence substantiating the effects of those barriers on communications with Detained Clients with Disabilities. Defendants can challenge that evidence

---

[20] Defendants also state that some of the access issues Plaintiff experienced "cannot be attributed to Defendants' actions" because Pedro "refus[ed] to meet with counsel" and "did not call back" when Plaintiff "used Florence's call-back messaging system." Defs.' MTD at 30. These contentions ignore Plaintiff's factual allegations that flaws in Florence's call-back system present barriers to access. *See, e.g.*, SAC ¶ 125 ("Detained Clients with Disabilities . . . are especially unable to navigate the call-back system effectively due to their symptoms or conditions. . . . Symptoms of delusions and paranoia can cause some Detained Clients with Disabilities to be unwilling to speak about their cases from the housing units."). Defendants' attempt to blame Pedro for these flaws ignores Plaintiff's factual allegations about the problems with Florence's existing communication mechanisms.

on summary judgment or at trial, but at this stage they do not demonstrate that Plaintiff fails to state a claim for a lack of meaningful access.

ii.   *FIRRP Alleges a Denial of Reasonable Accommodations.*

FIRRP, stymied by poor access to its Detained Clients with Disabilities at Florence, has requested a wide variety of forms of accommodations. Defendants' attempt to attack the reasonableness of each type of accommodation fails. *See* Defs.' MTD at 32-39.

As with the question of whether access is meaningful, the question of "whether a particular type of accommodation is reasonable is commonly a contextual and fact-specific inquiry." *Solomon*, 763 F.3d at 9. For this reason, the "reasonableness of an accommodation under the [closely related ADA inquiry] is a question of fact appropriate for resolution by the trier of fact and not by the Court on a motion under Fed. R. Civ. P. 12(b)(6)." *Niece v. Fitzner*, 922 F. Supp. 1208, 1218 (E.D. Mich. 1996). FIRRP addresses each category of attorney access for which it has requested accommodations below.[21]

In-Person Visitation: Plaintiff's Second Amended Complaint explains that FIRRP has sought accommodations in the form of "clearly established procedures for attorneys to visit with clients in medical, isolation, or segregation units, [and] contact . . . visits where clients can communicate with attorneys face-to-face." SAC ¶ 127; *see also id.* ¶ 114 (specific example as to Jose), 118 (specific example as to Pedro). Defendants respond that they have an accommodation procedure to permit in-person visits with clients in isolation housing that they have never mentioned during nearly a year of litigation. Defendants—for the first time—set out a procedure

---

[21] Defendants argue that some of Plaintiff's overarching allegations of denials of accommodations are too vague because they state that, for example, "Florence *generally* does not provide" the accommodations Plaintiff requests. Defs.' MTD at 33 (quoting SAC ¶ 128) (emphasis in motion). But Plaintiff provides the specificity underlying these overarching allegations throughout its Second Amended Complaint. *See, e.g.*, SAC ¶¶ 113-15, 117-18, 123, 128.

where FIRRP may visit a client after obtaining approval from ICE officials and medical staff, and they now blame their failures to accommodate visits on FIRRP for not "adher[ing] to the appropriate procedure." Defs.' MTD at 33-34. Defendants' new contention fails because it ignores Plaintiff's allegation that no procedure is established *or* followed at the facility: "When FIRRP attorneys mention requests for accommodations, facility staff often appear to lack knowledge or awareness of what responsibilities they have to accommodate detained people with disabilities." SAC ¶ 128. FIRRP alleges that even when its staff obtained pre-clearance for an in-person legal visit for a Detained Client with Disabilities in medical observation from ICE and medical staff, "Florence officials' initial[ly] attempt[ed] to deny the visit despite that authorization." SAC ¶ 115. In fact, Defendants admit that they do not consistently follow this procedure, arguing that, when they do not, it is because following the procedure would represent an unreasonable accommodation. Defs.' MTD at 34 ("[I]t is more than reasonable to re-schedule a visit when a client is experiencing extreme symptoms of a severe mental illness[.]"). Whether this newly identified procedure is truly available and effective at Florence is clearly a question of fact that cannot be resolved at this stage in the litigation. Defendants' bald allegation of unreasonableness cannot dispose of the "fact-specific" reasonableness question. *Solomon*, 763 F.3d at 9.

Video Visitation: The Second Amended Complaint also explains that, other than in-person visitation, video visitation is often the only way to effectively communicate with Detained Clients with Disabilities. SAC ¶ 127. Plaintiff alleges that Detained Clients with Disabilities are often housed in "segregated housing outside of the medical unit," where they lack access to VTC. *Id.* ¶ 122. Defendant argues that "Plaintiff offers *no evidence* that VTC access is a reasonable accommodation." Defs.' MTD at 37 n.17 (emphasis added). Plaintiff, however, alleges facts demonstrating that it is a reasonable accommodation, which is all that is required at the pleading

stage. SAC ¶ 127 (alleging that "disabilities often make it essential for [Detained Clients with Disabilities] to be able to visually see their attorneys when communicating and make it helpful for their attorneys to be able to see them").[22] Defendants also argue that an accommodation request for VTC visits is moot because video visits "are now available through the virtual visitation booths" that Defendants installed not only after the Second Amended Complaint was filed, but also solely in response to the preliminary injunction entered in this case. Defs.' MTD at 37. This late-implemented measure (even if operational and accessible) does not moot Plaintiff's claims. *See supra* note 16.

Facilitated Phone Calls: FIRRP also alleges that Detained Clients with Disabilities experience particular difficulties using the call-back message system at Florence. SAC ¶ 125; *see also id.* ¶¶ 113 (explaining that Plaintiff was only able to use this system "three times" to communicate with Jose "despite numerous attempts"), 117 (explaining that it could never communicate with Pedro using this system). FIRRP alleges that it has requested facilitated, scheduled phone calls as an accommodation, and that those requests have been "repeatedly denied." *Id.* ¶¶ 114, 128. Defendants' only response is to point to the rare occasions on which FIRRP was able to connect with Detained Clients with Disabilities on the phone despite Defendants' system's flaws, which Defendants claim "demonstrates that Florence's call-back message system worked." Defs.' MTD at 35. But these sporadic and unreliable occasions do not render the requested accommodations unnecessary or unreasonable. *See Durrenberger v. Tex. Dep't of Crim. Just.*, 757 F. Supp. 2d 640, 653 (S.D. Tex. 2010) (rejecting a prison's contention

---

[22] Plaintiff plans to substantiate this allegation with fact and expert evidence at the appropriate stage of the case, but Defendants' reliance on a lack of evidence on a Rule 12(b)(6) motion must fail.

that it had made a reasonable accommodation for a visitor's hearing impairment by "*sometimes* arranging a less noisy end booth[,] that "will not always be available") (emphasis added).

Defendants also argue that FIRRP's reasonable accommodation request for facilitated phone calls with its Detained Client, Pedro, involved steps that constituted an "unreasonable accommodation." Defs.' MTD at 36-37. This argument ignores Plaintiff's allegations demonstrating that Defendants and facility staff alike have suggested the use of facilitated phone calls. SAC ¶ 110 (alleging that Defendant ICE itself has issued a directive requiring "'[f]acilitation of communication' including, 'but not limited to,' 'facilitating the pre-scheduling of attorney of record, legal representative, and/or QR calls at no cost'" to detained people with serious mental disabilities), 114 (alleging that Florence staff "charged with telephonic visitation scheduling at Florence" had expressed "interest" in establishing a system for "private, scheduled legal phone calls facilitated by Florence staff"). These allegations permit the strong inference that these facilitated phone calls are a reasonable accommodation at Florence.

Cell-Side Visits: FIRRP also explains that, after Defendants' policies resulted in multiple failed attempts to visit Pedro, it requested—and was refused—an accommodation where its staff would visit Pedro cell-side (*i.e.*, go to Pedro's isolation cell and conduct an interview through the door). SAC ¶ 118. Defendants do not contest that they denied this request, arguing only that "Plaintiff does not explain the basis for the denial or if and how a 'cell-side' visit was a reasonable accommodation." Defs.' MTD at 35. This excuse fails. Plaintiff explains that "[b]ased on a conversation with Florence visitation officers, such a request had been granted at least once before"—demonstrating that it is reasonable. SAC ¶ 118. The Second Amended Complaint does not explain Defendants' own basis for denying this cell-side visit because Defendants did not provide one. *See id.*

Transfers for Visits: FIRRP also alleges that, when numerous attempts to visit Pedro at Florence failed, it requested that he be transferred to the "Florence Detention Center, another nearby ICE facility," where its staff could visit him. SAC ¶ 118. FIRRP alleges that these requests were denied "in all but one instance," *id.*, and Defendants agree. Defs.' MTD at 38. Defendants try to excuse their denials by arguing that transfer is not a reasonable accommodation because of the "many factors" that "must be considered . . . including the safety and security of the detainee, other detainees, counsel, and the staff at both facilities." *Id.* Defendants are welcome to present evidence and expert testimony on these "many factors" at the appropriate stage in this case, but they cannot simply point to the purported "many" facts that will be at play as a basis for dismissal at the Rule 12 stage.

### iii.    *FIRRP Alleges Exclusion Based on Disabilities.*

Finally, Defendants argue that FIRRP did not allege that "ICE discriminates against [its clients] because they have a mental illness." *Id.* at 39. In making this argument, Defendants invent a rule that a Rehabilitation Act claim cannot stand on allegations that people with disabilities "*experience* [defendants'] means of access to counsel differently from other detainees as a result of their mental disabilities." *Id.* (citing SAC ¶ 111) (emphasis in original).[23] This invented rule

---

[23] Defendants cite only a single opinion to support this invented rule. *See* Defs.' MTD at 39 (citing *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 650 (9th Cir. 2021). But that out-of-circuit opinion stands for an unrelated proposition. There, the plaintiffs alleged that people with medical vulnerabilities to COVID-19 faced disability discrimination because "a person cannot participate in challenging her removal from this country—by communicating with counsel, witnesses, or the immigration judge—if she is on a ventilator." *Fraihat*, 16 F.4th at 650. The court found that "bare allegation" insufficient to prove discrimination at the preliminary injunction stage. *Id.* Here, in contrast, Plaintiff details the specific harms that Defendants' attorney access barriers impose on Detained Clients with Disabilities. *E.g.*, SAC ¶¶ 118 ("[Plaintiff was un]able to communicate with Pedro since the day of his last court date on January 17, 2023, until he was ultimately released from custody."), 121 ("Interruptions in communication can undermine the attorney-client relationship."), 123 ("Detained Clients with Disabilities may experience a total loss of access to counsel for weeks because of prolonged periods in mental health segregation."), 130 ("In some

contradicts the very basic premise of disability law: that "to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Choate,* 469 U.S. at 301. For instance, a deaf plaintiff can assert a need for a reasonable accommodation even in a prison that does not explicitly ban him from using its telephones. *See Rogers*, No. 16-02733, 2019 WL 4464036, at *16. This is true even though his claim for a reasonable accommodation is not based on an explicit ban, but, to borrow Defendants' phrasing, is based on the fact that he "*experience[s]* these means of access" to the outside world differently from people who can use phones. Defs.' MTD at 39. The defendants raised the exact same argument in *Franco-Gonzalez*, where the court correctly rejected it. In particular, the *Franco-Gonzalez* court rejected the defendants' argument that plaintiffs "are not denied access 'solely by reason' of their disability because the Government does not intend to prevent them from full participation in their removal proceedings." *Franco-Gonzalez*, 2013 WL 3674492, at *4. The court explained that in an action solely for injunctive relief, "it is sufficient that [p]laintiffs are unable to meaningfully access the benefit offered—in this case, full participation in their removal and detention proceedings— because of their disability." *Id.* (citing *Choate,* 469 U.S. at 299). This Court should likewise reject Defendants' argument here.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss should be denied.

---

cases, FIRRP attorneys have experienced periods—from days to months—where they could not access Detained Clients with Disabilities at all because of these barriers.").

Respectfully submitted this 28th day of September, 2023.

/s/ Eunice H. Cho
Eunice H. Cho (DC Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth St. N.W., 7th Floor
Washington, DC 20005
(202) 548-6616
echo@aclu.org

Kyle Virgien (CA Bar No. 278747)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
39 Drumm St.
San Francisco, CA 94111
(202) 393-4930
kvirgien@aclu.org

Jared G. Keenan (AZ Bar No. 027068)
Vanessa Pineda (AZ Bar No. 030996)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, AZ 85011
(602) 650-1854
jkeenan@acluaz.org
vpineda@acluaz.org

Arthur B. Spitzer (DC Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
915 Fifteenth St. NW, 2nd Floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

Katherine Melloy Goettel (IA Bar No. 23821)*
Emma Winger (DC Bar No. 90010721)
Suchita Mathur (NY Bar No. 5373162)*
AMERICAN IMMIGRATION COUNCIL
1331 G St. N.W., Suite 200
Washington, DC 20005
(202) 507-7552
kgoettel@immcouncil.org
ewinger@immcouncil.org
smathur@immcouncil.org

/s/ Linda Dakin-Grimm
Linda Dakin-Grimm (DC Bar No. 501954;
DDC Bar No. CA00176)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
(424) 386-4404
ldakin-grimm@milbank.com

Stacey J. Rappaport (NY Bar No. 2820520)*
Andrew Lichtenberg (NY Bar No. 4881090)*
Joseph Kammerman (NY Bar No. 5516711)*
MILBANK LLP
55 Hudson Yards
New York, NY 10001
(212) 530-5347
srappaport@milbank.com
alichtenberg@milbank.com
jkammerman@milbank.com

Danielle Lee Sauer (DC Bar No. 1659736)
MILBANK LLP
1850 K Street, NW, Suite 1100
Washington, DC 20006
(202) 835-7532
dlee@milbank.com

*Counsel for Plaintiff*
*Admitted *pro hac vice*